# Illinois Official Reports

## Appellate Court

---

### *People v. Petrakis*, 2019 IL App (3d) 160399

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MATTHEW J. PETRAKIS, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-16-0399 |
| Filed<br>Rehearing denied | March 22, 2019<br>April 23, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 15-CF-680; the Hon. John P. Vespa, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Jerry Brady, State's Attorney, of Peoria (Patrick Delfino, David J. Robinson, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Matthew J. Petrakis, appeals from his aggravated criminal sexual abuse conviction. Defendant argues the State presented and the court erroneously admitted prejudicial evidence that defendant had committed other acts of promoting prostitution. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The State charged defendant by indictment with promoting juvenile prostitution (720 ILCS 5/11-14.4(a)(1) (West 2014)), aggravated criminal sexual abuse (*id.* § 11-1.60(d)), and promoting prostitution (*id.* § 11-14.3(a)(1)). Before trial, defendant filed a motion *in limine* to bar the State from introducing evidence of defendant's other similar conduct or offenses. The State objected to the motion and argued that evidence of defendant's other crimes was admissible to show propensity, intent, knowledge, absence of mistake, and any other relevant facts. See 725 ILCS 5/115-7.3 (West 2014).

¶ 4    At the hearing on defendant's motion, defendant argued evidence of his prior similar offenses was more prejudicial than probative and evidence of defendant's prior acts of prostitution could not be admitted as propensity evidence under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code). *Id.* The court denied defendant's motion and found

> "the Rules of Evidence allow evidence of other crimes if it is put forth only to show motive, absence of mistake, intent, things like that. Denied for that reason alone, but also I'm also denying it for a second reason, that being that I think it's quite obvious that the statute in question, 725 ILCS 5/115-7.3, Subparagraph (a), the intent of the statute is certainly, and it's not even close, intended—is intended to cover cases like this which would be promoting juvenile prostitution and aggravated criminal sexual abuse and promoting prostitution. So that's reason number two. And by the way, I don't know if this is a third reason or just information, I want the Defendant—well, I would make an instruction if asked, if an instruction is warranted regarding me instructing the jury that they can only consider this evidence for this purpose, period."

The case proceeded to a jury trial.

¶ 5    K.H. testified that she was 16 years old when she met defendant in May 2015. Immediately before she met defendant, K.H. was talking with defendant's cousin, Austeena, outside of Austeena's house when defendant drove up. Defendant gave his cell phone number to K.H. with instructions for K.H. to send him a text message. K.H. told defendant that she was 16 years old. Defendant "started smiling and started looking at [K.H.] up and down." K.H. sent defendant a text message as he drove away. Two days later, K.H. met defendant at his apartment where they had sexual intercourse.

¶ 6    Defendant maintained a sexual relationship with K.H. for approximately one month. During this time, defendant told K.H. that he loved her and that K.H. was "the best thing that ever happened to him." As defendant and K.H.'s relationship progressed, defendant mentioned that he fantasized about having sexual intercourse with K.H. and two other men at the same time. Defendant asked K.H. if she would participate in his sexual fantasy and did not discuss the details with her. K.H. agreed to participate. Later, K.H. overheard defendant say during a telephone conversation that "he had a nice white girl that they would be—and that he would

make it worth your while if you would have sex with them." Defendant did not mention a price for the encounter and only said that it would be "worth [the other man's] while."

¶ 7 When defendant attempted to arrange this sexual encounter, K.H. "had a bad feeling" and told defendant that she could not meet him and the two men because her father was angry. Defendant told K.H. that she was "worthless, and that he never meant anything he said in the beginning" of their relationship. On May 3, 2015, defendant again attempted to arrange for K.H. to have sexual intercourse with the two other men. K.H. refused to participate. K.H. estimated that she had sexual intercourse with defendant 12 times. Their relationship ended in late May 2015. K.H. also acknowledged that she had initially told one of the investigating officers that she did not have a sexual relationship with defendant. K.H. explained that she initially did not want to admit that she had made a mistake.

¶ 8 On cross-examination, K.H. denied telling defendant that she was 18 years old and restated that she told defendant she was 16 years old. K.H. also acknowledged that she had originally lied to an investigating officer about being pregnant with defendant's child.

¶ 9 S.D. testified that she met defendant in 2011. S.D. told defendant that she was 15 years old. Defendant responded that "[h]e didn't care," and he and S.D. entered into a sexual relationship. At first, defendant treated S.D. nicely, but as their relationship progressed, defendant became more controlling. Defendant lived with his mother, and he told S.D. that if she committed acts of prostitution, she and defendant could use the proceeds to obtain a home. S.D. loved defendant and, therefore, she engaged in acts of prostitution. Defendant accompanied S.D. to meet with her prostitution patrons and collected the money. During S.D.'s relationship with defendant, she received a tattoo on her lower abdomen that said " 'In the property of Matt P.' " S.D.'s relationship with defendant lasted for approximately six months. In the fall of 2011, S.D. and defendant were stopped by a police officer while S.D. was engaged in an act of prostitution.

¶ 10 K.N. testified that in March 2015, when she was 15 years old, she was living in foster care. At the time, she was unhappy in her home and asked a friend to pick her up. Her friend arrived at the home with defendant. Defendant drove K.N. and her friend to a hotel in Peoria. Defendant told K.N. if she wanted to stay in the hotel room, then she needed to perform oral sex on him, and if defendant told K.N. to have sexual intercourse with another person, she had to obey him. K.N. refused defendant's instruction, and defendant left the hotel room. The next day, K.N. was riding in defendant's vehicle when defendant forced her out of the door and sped away. K.N. was caught by the door and dragged down the road. On cross-examination, K.N. said that she never had any sexual contact with defendant.

¶ 11 Peoria police officer Sherrell Stinson testified that he arrested defendant on May 14, 2015. Defendant told Stinson that he was 44 years old.

¶ 12 The defense called Antonio Armstrong to testify. Armstrong testified that he was friends with defendant. Defendant and Armstrong would drive around town searching for girls. During one of their drives, Armstrong told defendant to stop his vehicle on Malone Street so Armstrong could speak with K.H. At the time, K.H. was walking by herself. Armstrong asked for K.H.'s name, age, and telephone number. K.H. told Armstrong her name, said that she was 18 years old, and gave her telephone number to Armstrong. Armstrong put K.H.'s telephone number in defendant's cell phone because Armstrong had a girlfriend and he did not want her to find K.H.'s telephone number in his cell phone. After this meeting, Armstrong sent one or two text messages to K.H., but he did not meet with K.H.

¶ 13 On cross-examination, Armstrong said that he told an interviewing police officer that he knew how old K.H. was when they met on Malone Street. The State impeached Armstrong's statement with a recording of Armstrong's police interview in which he responded in the negative to a question about whether he knew K.H.'s age. On redirect examination, Armstrong explained that he thought the investigator was asking if he initially knew K.H.'s age and that he only learned K.H.'s age after she said that she was 18 years old.

¶ 14 After the parties presented their closing arguments, the court instructed the jury, in relevant part, that

> "Evidence has been received that the Defendant has been involved in offenses other than those charged in the indictment. This evidence has been received on the issues of the Defendant's intent, motive, design or knowledge and may be considered by you only for that limited purpose.
>
> It is for you to determine whether Defendant was involved in those offenses and if so, what weight should be given to this evidence on the issues of Defendant's intent, motive, design or knowledge, and as to the indictment for aggravated criminal sexual abuse the Defendant's propensity to commit that offense."

¶ 15 The jury began deliberations at 3:09 p.m. At 5:10 p.m., the jury indicated that it had reached its verdict. The jury found defendant guilty of aggravated criminal sexual abuse and not guilty of promoting juvenile prostitution and promoting prostitution.

¶ 16 Defendant filed a motion for acquittal notwithstanding the verdict or a new trial. Defendant argued the court erred in denying his motion *in limine* to exclude evidence of his prior crimes. The court denied defendant's motion and sentenced defendant to 24 years in prison. Defendant appeals.

## II. ANALYSIS

¶ 17

¶ 18 Defendant argues that his conviction must be reversed and the case remanded for a new trial because the State presented a significant amount of prior crimes evidence that was inadmissible under section 115-7.3 of the Code and its prejudicial effect far outweighed its probative value. The State concedes that evidence of defendant's prior promotion of prostitution was inadmissible under section 115-7.3 of the Code. However, the State argues the court correctly admitted this evidence to show defendant's motive and intent to commit the two prostitution-related charges. We find the court did not abuse its discretion when it admitted this evidence to show defendant's motive and intent. Alternatively, if the court erred, any error was harmless given the weight of evidence against defendant.

¶ 19 We review the circuit court's decision to admit evidence of defendant's prior crimes for an abuse of discretion. *People v. Donoho*, 204 Ill. 2d 159, 182 (2003). The court abuses its discretion where its decision to admit evidence is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *Id.* As a court of review, we "may not simply substitute [our] judgment for that of the trial court on a matter within the trial court's discretion." *People v. Illgen*, 145 Ill. 2d 353, 371 (1991). In particular, we leave to the sound discretion of the circuit court the decision of whether the probative value of a defendant's other crimes evidence is outweighed by its prejudicial effect. *Id.* at 375. We will not reverse the court's decision unless it evinces a clear abuse of discretion. *Id.*

¶ 20    At the outset, we note the parties' dispute is limited to the court's admission of evidence of defendant's prior prostitution-related crimes because evidence of defendant's prior sex abuse was admissible under section 115-7.3(a)(1) of the Code. 725 ILCS 5/115-7.3(a)(1) (West 2014). With regard to this issue, we accept the State's concession that prostitution offenses are not admissible to show defendant's propensity to engage in similar offenses under section 115-7.3 of the Code. The two prostitution offenses that the State charged defendant with are not expressly listed in section 115-7.3 and, therefore, the court erred when it ruled that this section permitted the use of prior prostitution cases to prove defendant's propensity. Additionally, we note that Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), which permits the admission of otherwise excluded character evidence (*infra* ¶ 22), expressly incorporates section 115-7.3. However, this does not end our review because Rule 404(b) also permits the use of character evidence "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011).

¶ 21    Generally, evidence of a defendant's prior crimes is inadmissible because it is so persuasive of defendant's propensity to commit crimes that it becomes unfairly prejudicial. *Donoho*, 204 Ill. 2d at 170. This general rule is founded on the principal that:

> " 'A person cannot be convicted of an offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. *** It would lead to conviction upon the particular charge made by proof of other acts in no way connected with it and to uniting evidence of several to produce a conviction for a single one.' " *People v. Rogers*, 324 Ill. 224, 230 (1926) (quoting *People v. Governale*, 86 N.E. 554, 556 (N.Y. 1908)).

¶ 22    Rule 404(b) serves as an exception to this general rule. It permits the State to introduce evidence of a defendant's other crimes, wrongs, or acts to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, evidence of a defendant's other crimes used to show motive or intent may still be excluded from evidence if its prejudicial effect substantially outweighs its probative value. *Donoho*, 204 Ill. 2d at 170. Therefore, when presented with evidence of a defendant's prior crimes, the court must conduct a "meaningful assessment of the probative value versus the prejudicial impact of the evidence." *Id.* at 186. However, the court need not conduct this balancing test on the record. See *People v. Casillas*, 195 Ill. 2d 461, 486 (2000) (declining to find error where the transcript makes clear that the court applied the balancing test before admitting evidence of defendant's other crimes even though the court did not expressly articulate it).

¶ 23    In this case, the court's ruling, "the Rules of Evidence allow evidence of other crimes if it is put forth only to show motive, absence of mistake, intent, things like that," establishes that the court conducted the balancing test off the record and concluded that defendant's prior bad acts were more probative of his motive and intent than they were prejudicial. See *id.* We agree. Defendant exhibited a similar pattern of behavior and course of conduct with each victim. Defendant began his relationship with each victim by engaging in or attempting to engage in a sexual relationship. After establishing the relationship, defendant encouraged the victims to engage in sex acts with other individuals and specifically advocated for one victim to commit acts of prostitution. As a result, evidence of defendant's prior acts of promoting prostitution

was highly probative of defendant's motive and intent to commit similar acts of sexual misconduct.

¶ 24 Significantly, the court limited any potential prejudice to defendant by instructing the jury that it could only consider evidence of defendant's prior acts "on the issues of the Defendant's intent, motive, design or knowledge." See *Illgen*, 145 Ill. 2d at 376. Nothing in the record indicates that the jury disregarded this instruction. Therefore, we adhere to our "[f]aith in the ability of a properly instructed jury to separate issues and reach a correct result." *Id.*

¶ 25 Even if we were to find that the court abused its discretion in admitting evidence of defendant's prior acts of prostitution, this error would be harmless given the overwhelming evidence of defendant's guilt of aggravated criminal sexual abuse. There is no dispute in this case that the 44-year-old defendant had sexual intercourse with the 16-year-old victim several times during the time frame in question. At trial, the only issue of contention was whether defendant reasonably believed that K.H. was 18. In opposition to the defense's position that defendant believed K.H. was 18 years old was K.H.'s unequivocal testimony that she told defendant that she was 16 years old when they first met. This evidence was buttressed by the properly admitted evidence that defendant had a propensity for engaging in or attempting to engage in sexual relationships with underage girls. See 725 ILCS 5/115-7.3(a), (b) (West 2014); *Donoho*, 204 Ill. 2d at 176 (finding that the legislature enacted section 115-7.3 of the Code to enable courts to admit evidence of other crimes to show defendant's propensity to commit sex offenses if the requirements of section 115-7.3 were satisfied). Thus, the weight of the evidence established that K.H. was 16 years old at the time of the offenses which rendered any potential evidentiary error harmless.

¶ 26                                             III. CONCLUSION

¶ 27 The judgment of the circuit court of Peoria County is affirmed.

¶ 28 Affirmed.