**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180699-U

Order filed August 25, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0699 Circuit No. 18-CF-178 |
| LAWRENCE H. WEBB, | ) ) ) | Honorable H. Chris Ryan, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Presiding Justice McDade specially concurred.

**ORDER**

¶ 1     *Held*: (1) The circuit court properly denied defendant's motion *in limine* to exclude evidence obtained via an audio and video overhear; (2) counsel was not ineffective; (3) the court did not abuse its discretion in admitting other-crimes evidence; (4) the court's failure to comply with Illinois Supreme Court Rule 431(b) is not a reversible plain error; and (5) defendant failed to establish prejudice needed to reverse his otherwise forfeited prosecutorial misconduct issue.

¶ 2     Defendant, Lawrence H. Webb, appeals his convictions for unlawful delivery of a controlled substance. He argues: (1) the circuit court improperly admitted overhear recordings;

(2) counsel was ineffective for failing to move to suppress testimony derived from the improper recordings as the fruit of the poisonous tree; (3) the court erred in admitting evidence of defendant's other crimes; (4) the court failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012); and (5) the State committed prosecutorial misconduct. We affirm.

¶ 3                                I. BACKGROUND

¶ 4        The State charged defendant with one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2018)) and two counts of unlawful delivery of a controlled substance (*id.* § 401(d)(i)).

¶ 5        Before trial, defendant filed a motion *in limine* to bar the State from introducing the audio and video recordings made during the controlled narcotics buy that preceded the charges. The motion alleged that the audio and video recordings were authorized by an assistant state's attorney, and the State failed to comply with sections 14-3(g), (q)(1), (q)(2), (q)(3) and (q)(3.10) of the Criminal Code of 2012 (Code) (720 ILCS 5/14-3(g), (q)(1), (q)(2), (q)(3), (q)(3.10) (West 2018)). At the hearing on the motion, defense counsel presented no evidence and only argued the State failed to strictly comply with the statute.

¶ 6        The State called La Salle County State's Attorney Karen Donnelly to testify. Donnelly said, in a 2016 memorandum, she authorized Assistant State's Attorney Brian Vescogni to authorize 24-hour overhears pursuant to section 14-3 of the Code. The State introduced a copy of the authorization memorandum into evidence. Donnelly explained "If I'm not available, then Mr. Vescogni was next in line to issue the overhear."

¶ 7        Vescogni testified that Donnelly had authorized him to approve overhear requests. He identified an "Overhear Approval form" that he filled out for this case. Typically, prior to filling out the form, a law enforcement agent calls Vescogni, requests a 24-hour overhear, and provides

2

the required information which Vescogni memorializes on the form. Vescogni asks "any additional questions that [he] needed to assure that [the overhear] complies with the statute." After memorializing the information on the form, he has the form sealed. Vescogni had all of the required information on the day he filled out the form for this case.

¶ 8 On cross-examination, Vescogni said he did not sign the bottom of the overhear approval form and stated that he never does. He testified it was his writing on the form. There are times he would initial a form if someone else filled it out for him.

¶ 9 Defense counsel argued he did not believe the blanket authorization from the memorandum was a sufficient delegation of authority to permit Vescogni to approve an overhear. Counsel otherwise stood on his motion.

¶ 10 The court found that Donnelly had authorized in her absence or unavailability the assistant state's attorneys to provide authorization for a 24-hour overhear. The court found Vescogni's authorization of the overhear at issue was permitted. The court determined that there was not any violation of the statute and denied the motion *in limine*.

¶ 11 The State filed motions *in limine* seeking approval to introduce evidence of defendant's prior conviction for unlawful delivery of a controlled substance and evidence that defendant made statements that he had been selling drugs as evidence of defendant's knowledge and intent. The court granted the motions over defendant's objection noting that it had balanced the prejudicial effect and probative value of this evidence and determined the evidence would be admitted with a limiting instruction.

¶ 12 The State dismissed count I, and the cause proceeded to a jury trial on the two unlawful delivery of a controlled substance charges. During jury selection, the court set forth the four principles prescribed by Illinois Supreme Court Rule 431(b) (July 1, 2012). It then asked each

3

prospective juror if they had "a problem with any of those" principles and if they would follow the principles.

¶ 13        At trial, Agent Jason Clift testified that a confidential informant (CI) told him that she could buy heroin from defendant. On May 2, 2018, the CI arranged to purchase narcotics from defendant at a building near the Illinois and Michigan canal path in Ottawa. Clift provided the CI with two recorded $100 dollar bills and audio and video recording equipment. Clift observed defendant at the prearranged purchase location. After the controlled buy, the CI gave Clift the suspected narcotics. Later, Corporal Robert Nilles informed Clift that he conducted a search of defendant and discovered two $100 bills. Clift confirmed that the bills Nilles found were the same as those he provided to the CI for the controlled buy.

¶ 14        Detective Kyle Booras testified that on May 2, 2018, he was part of a surveillance team for a possible drug transaction near the canal path in Ottawa. He observed defendant pull up and walk into a building along the canal path with a backpack. Booras also saw the CI enter and exit the same building.

¶ 15        Agent Sherry Barto testified that she searched the CI before the controlled buy. The CI did not have any contraband or money on her. After the CI received the recorded $100 bills, Barto transported the CI to the prearranged location. After the buy, Barto conducted another search of the CI. The CI did not have any additional currency or contraband. The CI also no longer had the two recorded $100 dollar bills, but instead had the suspected narcotics.

¶ 16        The CI testified that she became an informant because she had struggled with narcotics addiction and had sold narcotics. The CI was still receiving addiction treatment but no longer used narcotics. The CI had also been charged with retail theft. The CI assisted police with 11 cases.

4

By the time the CI worked on defendant's case, she no longer had any pending charges and participated in exchange for a $100 payment.

¶ 17    On May 2, 2018, the CI informed agents that she could purchase narcotics from defendant. Later that day, the CI called defendant and asked to purchase heroin. An officer gave the CI two recorded $100 bills and equipped her with an audio and video recording device. Barto drove the CI to the prearranged location on the canal path in Ottawa. There, the CI received a call from defendant and met with defendant. The CI gave defendant the two recorded $100 dollar bills, and defendant gave her baggies with a substance in them. The CI walked with the baggies in her hands to Barto's vehicle. While in the vehicle, the CI held the baggies until she met with Clift. Subsequent testing on the substances in the baggies indicated that one baggie contained heroin and the other contained cocaine.

¶ 18    The audio and video recording of the controlled buy was introduced into evidence. It shows the CI and defendant meeting at the prearranged location. It also shows an unidentified male and unidentified female at that location, who appear to interact and converse with defendant.

¶ 19    Nilles testified that he was aware of the May 2, 2018, controlled buy. Later that day, Nilles searched defendant and discovered approximately $400. Nilles photographed the money. He advised Clift of this encounter and Clift obtained the photographs.

¶ 20    Prior to the following testimony by Nilles, the court instructed the jury that certain evidence it was going to hear about defendant being involved in offenses other than those he was on trial for was being received only on the issues of defendant's knowledge and intent and could not be considered for any other purpose. The court also instructed the jury that it must determine the weight to be given to the evidence on the issue of knowledge and intent.

5

¶ 21       Nilles testified that he had another encounter with defendant six days later where he interviewed defendant on video. Nilles identified the exhibit as the video of his conversation with defendant. The State then played the video. The video shows Nilles confront defendant about selling drugs, and defendant admitting that he had been selling crack cocaine and sharing heroin.

¶ 22       The court gave another limiting instruction regarding evidence of defendant's other offenses, and the State introduced a certified copy of defendant's conviction for unlawful delivery of a controlled substance. Defendant did not testify.

¶ 23       During closing arguments, the State told the jury multiple times to use "common sense." After discussing some of the evidence, the State again told the jury "Use your common sense," followed by "Now, I want you to hold [defense counsel] to the same standard." Defense counsel objected and that objection was sustained. In rebuttal, the State said, "And I didn't hear any explanation for why [defendant] has the money in his pocket." Defense counsel did not object to this statement.

¶ 24       The court instructed the jury that: "[c]losing arguments are made by the attorneys to discuss the facts and circumstances in the case and should be confined to the evidence and the reasonable inferences to be drawn from the evidence"; neither opening nor closing statements are evidence and that any statement or argument not based on the evidence should be disregarded; defendant is presumed innocent, the State has the burden of proving defendant's guilt beyond a reasonable doubt, and defendant is not required to prove his innocence. The fact that defendant did not testify must not be considered by the jury in anyway.

¶ 25       The jury found defendant guilty. Prior to sentencing, defense counsel made an oral motion for new trial. Counsel argued the court erred in allowing the video of the controlled buy into

evidence. The court denied the motion, stating nothing was presented which would warrant revisiting the issue. The court sentenced defendant to 12 years' imprisonment. Defendant appeals.

¶ 26                                    II. ANALYSIS

¶ 27                               A. Overhear Recording

¶ 28         Defendant argues that the circuit court improperly admitted the audio and video recording of the controlled buy into evidence because Vescogni did not have authority to authorize the overhear. We disagree as defendant failed to meet his burden to establish the recordings were inadmissible.

¶ 29         Eavesdropping is a criminal offense. 720 ILCS 5/14-2 (West 2018). Section 14-3(q)(1) of the Code, provides an exception for recording a conversation in which a person acting at the direction of law enforcement is a party to the conversation and has consented to the recording in the course of an investigation of a qualified offense if the recording is done "[w]ith prior request to and written or verbal approval of the State's Attorney ***." *Id.* § 14-3(q)(1). "State's Attorney" includes "the State's Attorney or an assistant State's Attorney designated by the State's Attorney to provide verbal approval to record or intercept conversations under this subsection (q)." *Id.* § 14-3(q)(7). "Compliance with the provisions of this subsection is a prerequisite to the admissibility in evidence of any part of the contents of any wire, electronic or oral communication that has been intercepted as a result of this exception ***." *Id.* § 14-3(q)(5). "Any evidence obtained in violation of this Article is not admissible in any civil or criminal trial ***." *Id.* § 14-5.

¶ 30         Defendant, as movant, bore the burden with regard to his motion *in limine*. See *People v. Smith*, 248 Ill. App. 3d 351, 358 (1993). We review the court's denial of defendant's motion *in limine* to bar the overhear evidence for an abuse of discretion. *People v. Williams*, 188 Ill. 2d 365, 369 (1999).

¶ 31        In the circuit court, defendant made no substantive argument and presented no evidence in support of his contention that the State violated section 14-3 of the Code. Instead, defendant solely asserted that the audio and video recordings appeared to have been authorized by an assistant state's attorney, and therefore violated various subsections of section 14-3 of the Code. Even when faced with the State's contrary evidence at the hearing, defense counsel presented no rebuttal evidence and made no substantive argument. Instead, counsel simply stated that he did not believe the memorandum's blanket authorization was a sufficient delegation of authority. Therefore, defendant failed to satisfy his burden to establish that the overhear was unauthorized. Although the circuit court did not deny defendant's motion *in limine* on this ground, we may affirm for any reason supported by the record. *People v. Tondini*, 2019 IL App (3d) 170370, ¶ 25.

¶ 32        Defendant also argues that the recordings were inadmissible because there were third parties on the recordings that were not specified in the overhear approval. See 720 ILCS 5/14-3(q)(3)(B) (West 2018) (limiting any approval to the recording of conversations with the individual specified in the request for approval, but also permitting recording "of conversations with other individuals, unknown to the law enforcement officer at the time of the request for approval, who are acting in conjunction with or as co-conspirators with the individuals specified in the request for approval in the commission of a qualified offense"). However, defendant forfeited this argument because he did not make it in the circuit court. See *People v. Blair*, 215 Ill. 2d 427, 443-44 (2005) (a party cannot make an argument for the first time on appeal).

¶ 33                         B. Ineffective Assistance of Counsel

¶ 34        Defendant argues that counsel was ineffective for failing to move to suppress the CI's testimony. He argues that because the recordings were inadmissible due to the State's purported failure to comply with section 14-3(q), the CI's testimony regarding what was captured in the

8

recordings was likewise inadmissible as the fruit of the poisonous tree. We disagree because defendant cannot establish that he suffered prejudice.

¶ 35 To prevail on a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

> "To establish defendant's prejudice resulting from counsel's failure to file a motion to suppress evidence, a defendant must show that: (1) the unargued suppression motion is meritorious (*i.e.*, would have succeeded); and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed." *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 17.

"[I]f [an] ineffective-assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient." *People v. Griffin*, 178 Ill. 2d 65, 74 (1997).

¶ 36 Here, defendant cannot show prejudice because there is no reasonable probability that the outcome of the trial would have been different had counsel moved to suppress the CI's testimony. Assuming that the overhear evidence was inadmissible, and that the CI's testimony was therefore inadmissible,[1] the remaining evidence readily established defendant's guilt. Specifically, officers who assisted with the set up and surveillance of the buy observed the defendant and CI meet at the prearranged location. Testimony further established that the CI had two recorded $100 bills before the buy, met with defendant, and returned with baggies containing heroin and cocaine, and that defendant was subsequently found in possession of the two recorded $100 bills. This evidence,

---

[1]We note that there is a split in authority on this issue in this court. See *People v. Davis*, 2020 IL App (3d) 190272 (leave to appeal granted), and *People v. Harris*, 2020 IL App (3d) 190504. We need not address this split as the evidence is conclusive regardless of the CI's testimony.

which defendant does not argue is inadmissible, readily established defendant's guilt of unlawful delivery of a controlled substance without the recording or the CI's testimony.

¶ 37                                    C. Other-Crimes Evidence

¶ 38        Defendant argues that the circuit court abused its discretion in admitting evidence of his other crimes because the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. The parties dispute whether this issue was properly preserved for appellate review. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (generally, to preserve an error for appellate review, a defendant must object to the error at trial and raise it in his posttrial motion). Defendant argues that if we find that the issue was not properly preserved it is a reversible plain error because the evidence was closely balanced or the result of ineffective assistance of counsel. We find that defendant forfeited this issue because he did not include it in his posttrial motion. Additionally, it is not a reversible plain error or the result of ineffective assistance of counsel because the court did not err.

¶ 39        The plain error doctrine proceeds in two steps. First, we determine whether a clear and obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). If we find that a clear and obvious error occurred, then we determine whether that plain error is reversible because (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *Id.*

¶ 40        Generally, evidence of a defendant's prior crimes is inadmissible because it is so persuasive of defendant's propensity to commit crimes that it becomes unfairly prejudicial. *People v. Donoho*, 204 Ill. 2d 159, 170 (2003). Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011) permits

10

character evidence for "purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, other-crimes evidence "may still be excluded from evidence if its prejudicial effect substantially outweighs its probative value." *People v. Petrakis*, 2019 IL App (3d) 160399, ¶ 22; see also Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 41 Here, defendant was charged with unlawful delivery of a controlled substance. 720 ILCS 570/401 (West 2018). Knowledge is an element of this offense. *Id.* A defendant's knowledge is rarely susceptible of direct proof. *People v. Jones*, 2014 IL App (3d) 121016, ¶ 28.

¶ 42 Defendant's statements to Nilles that he had been selling crack cocaine and sharing heroin and his prior conviction for unlawful delivery of a controlled substance, were highly probative of the knowledge element of unlawful delivery of a controlled substance. Significantly, the court limited any potential prejudice to defendant by issuing several limiting instructions that instructed the jury that the other-crimes evidence could only be considered on the issue of defendant's knowledge and intent. See *Petrakis*, 2019 IL App (3d) 160399, ¶ 24. Nothing in the record indicates that the jury disregarded these instructions. Therefore, we find that the court did not err as the probative value of defendant's other crimes was not substantially outweighed by the danger of unfair prejudice. Finding no error, we need not proceed to the second step of the plain error analysis. Similarly, we need not determine whether counsel was ineffective for failing to preserve this issue because the underlying issue is meritless. See *People v. Edwards*, 195 Ill. 2d 142, 165 (2001) ("Counsel cannot be considered ineffective for failing to make or pursue what would have been a meritless objection.").

¶ 43 D. Failure to follow Rule 431(b)

¶ 44 Defendant argues that the court did not comply with Rule 431(b) when it failed to ask each juror if they understood and accepted the principles set forth in the rule. While defendant forfeited

11

this issue (see *Enoch*, 122 Ill. 2d at 186), he asserts that the evidence is closely balanced, such that this plain error is reversible. We conclude the evidence is not closely balanced and thus, reversal is not warranted.

¶ 45　　The first step in applying the plain error doctrine is to determine whether the court's Rule 431(b) instruction constitutes a clear and obvious error occurred. *Supra* ¶ 39. Here, the State concedes error, and we accept the State's concession because the record establishes that the court failed to ask each juror if they understood and accepted the four principles set forth in Rule 431(b).[2] Therefore, we need only determine whether the evidence was closely balanced.

¶ 46　　To determine whether the evidence is close, we must evaluate the totality of the evidence and "conduct a qualitative, commonsense assessment of it within the context of the case." *People v. Sebby*, 2017 IL 119445, ¶ 53. This inquiry involves an assessment of the evidence of the elements of the offense, along with any evidence of witness credibility. *Id.*

¶ 47　　Here, defendant was charged with unlawful delivery of a controlled substance. 720 ILCS 570/401(d)(i) (West 2018). This charge required the State to prove that defendant knowingly delivered to the CI a substance containing heroin and a substance containing cocaine. See *id.*

¶ 48　　The evidence at trial established that the CI set up a controlled narcotics buy with defendant. Clift gave the CI recorded bills to purchase the narcotics. The CI met with defendant and returned to the officers with two bags containing heroin and cocaine. The CI no longer had the recorded bills. Nilles discovered the bills on defendant after the controlled buy. This evidence,

---

[2]Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) requires the circuit court to ask each potential juror "whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects."

along with the evidence of defendant's other crimes (*supra* ¶¶ 40-42), conclusively established that defendant knowingly delivered heroin and cocaine to the CI. Thus, the evidence is not closely balanced, and the court's Rule 431(b) error is not a reversible plain error.

¶ 49                                    E. Prosecutorial Misconduct

¶ 50        Defendant argues that the State committed prosecutorial misconduct during its closing arguments when it shifted the burden of proof to defendant by stating the jury should hold defense counsel to the same standard, and it commented on defendant's exercise of his right to remain silent by stating that it did not hear an explanation for why defendant had the recorded money. While defense counsel objected to one comment during closing arguments, he did not object to the other comment and did not include either in his motion for new trial. Therefore, this issue is forfeited. See *Enoch*, 122 Ill. 2d at 186. Faced with this forfeiture, defendant argues for reversal under the closely balanced prong of the plain error doctrine or because counsel was ineffective for failing to raise and/or preserve these issues. We conclude that even if there was misconduct, it is not reversible because defendant cannot establish that he suffered the prejudice needed for reversal under either the plain error or ineffective assistance of counsel analyses.

¶ 51        The plain error doctrine is founded upon prejudice. *People v. Stewart*, 2018 IL App (3d) 160205, ¶ 19. To establish prejudice under the closely balanced prong, defendant must show that (1) the court committed a clear and obvious error, and (2) that "plain" error is reversible because the evidence is so closely balanced. *Piatkowski*, 225 Ill. 2d at 565; *supra* ¶ 39. The ineffective assistance of counsel analysis has a similar prejudice component: defendant must demonstrate that but for counsel's deficient performance, there was a reasonable probability of a different result at trial. *People v. White*, 2011 IL 109689, ¶ 133.

¶ 52    Because we have already determined that the evidence is not closely balanced (*supra* ¶ 48), even if the State's closing argument comments constitute prosecutorial misconduct, this forfeited error is not reversible because defendant cannot show the prejudice needed for reversal under either a closely balanced plain error analysis or an ineffective assistance of counsel analysis.

¶ 53                                    III. CONCLUSION

¶ 54    The judgment of the circuit court of La Salle County is affirmed.

¶ 55    Affirmed.

¶ 56    PRESIDING JUSTICE McDADE, specially concurring:

¶ 57    I concur in the decision of the majority because I understand that the result is compelled by the current supreme and appellate court precedent set out in the judgment. I write separately to reiterate my belief that the failure of a trial court to comply with Supreme Court Rule 431(b) threatens the integrity of the criminal trial and, therefore, the integrity of the criminal justice system of our state. It should always be automatic reversible error.

¶ 58    If you were playing in the seventh game of the World Series or starting the chess match for the world championship or competing for Olympic gold, you would not want the outcome of the contest to rest on the judgment and calls of umpires, referees, and judges who are not familiar with, do not thoroughly understand, and have not committed to follow the basic rules of the game. And if you lost on a close call, you would never accept that defeat as valid because the one making the calls is not demonstrably trustworthy.

¶ 59    As momentous as these events may be, their impact—fame, fortune, medals, bragging rights—pales in comparison to that in play in the adversarial contest in our criminal courts. In those courtrooms the stakes are, on the one hand, closure, punishment, and a measure of vengeance for victims and their families and, on the other, loss of liberty and life for defendants. Even in a

14

state such as ours where the death penalty is no longer on the table, life is still very much in issue. Ten, twenty, thirty of your most vital years gone. And if you are one of the far-too-many people proven to have been wrongly convicted in our courts, the inherently devastating effect is compounded by the sheer injustice of your conviction and a sentence of even one day of incarceration for a crime you did not commit.

¶ 60 In the instant case, as in all cases tried to a jury, the sifting, assessing, and weighing of evidence, the determination of guilt or acquittal rests in the hands of 12 people, most of whom enter the jury pool without legal training or experience and without real knowledge of the basic principles that guide how their decision should be made. They, unlike umpires, referees, and line judges, have not had workshops and clinics or opportunities to gain experience at lower levels of competition before they make it to the championship level. For many, perhaps most, jurors this service is a one-shot deal.

¶ 61 In discharging this critical civic duty, they are asked to apply concepts which are fundamentally counterintuitive. "Of course this guy is not 'innocent.' Didn't the police investigate this crime? As a result wasn't he charged and brought in here to stand trial?" or "If he knows stuff that shows he didn't do it, why doesn't he just tell us? That's what I would do. If he doesn't, there probably isn't anything that helps him because he probably did it." That kind of thinking is *normal*; it is up to the court to make sure they understand that no matter how logical or sensible such thoughts seem, they cannot be allowed to insinuate themselves into the trial because it destroys the adversarial process on which our assessment of justice depends.

¶ 62 Every criminal jury trial presents the trial judge with the previously described weighty and grave consequences for both victims and defendants, the same counterintuitive standards for reaching a just verdict, and fact finders who lack training and experience for their daunting task.

15

It is therefore imperative that the judge follow the Rule's primary directive and give these instructions properly. If that is not done, none of us—not the judge, the attorneys for the parties, the defendant, or those of us sitting on courts of review—can have real confidence that the trial was fair and the verdict is just.

¶ 63    So, where did the trial court go wrong here? All four of the core trial principles were identified in the court's instruction to the jury. Although defendant's exemption from producing any evidence in his defense was embedded between the presumption of innocence and the burden of proof in a single statement, it *was* stated. The court asked each juror individually if he or she "ha[d] any problem with any of those principles" and if the juror could follow them. And yet the State concedes and this court finds this recitation was error. What is the error?

¶ 64    The requirements of Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. July 1, 2012)) are clear. It states:

> "(b)  The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.
>
> *"The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section."* (Emphasis added.) *Id.*

16

The single "Committee Comment" that follows the statement of the rule reinforces its actual focus, observing:

> "The new language is intended to ensure compliance with the requirements of *People v. Zehr,* 103 Ill.2d 472 (1984). *It seeks to end the practice where the judge makes a broad statement of the applicable law followed by a general question concerning the juror's willingness to follow the law."* (Emphasis added.) *Id.,* Committee Comments.

That "Committee Comment" tells us that the trial court did exactly what the language of the earlier version of the rule was modified to tell it *not* to do. To its credit, the trial court took the time to inquire of each person individually; it just did not ask the right questions. "Do you have a problem with any of those principles?" is a far cry from questions designed to encourage the juror to actually consider whether he or she really understands what the principle means and how it operates when witnesses are testifying and physical evidence is being produced, and to ask for an explanation if the juror has any questions about how it works. That did not happen in this case.

¶ 65 The Illinois Judicial Benchbook on Criminal Law and Procedure suggests that one appropriate way to frame each question would be: "Do you understand and accept that the defendant is presumed innocent of the charge(s) against him?" A question in this form addressing each of the four principles, while still fairly *pro forma*, does more to encourage the potential juror to actually consider his/her degree of understanding of the concept, to consider what it means to "accept" it, and to ask questions if he or she has any doubt.

¶ 66 In this case, the trial court's error was compounded because trial counsel failed to preserve this issue and that of prosecutorial misconduct for review. That failure had the effect of shifting this court's focus away from the serious procedural errors that defendant has sought to appeal and into a "plain error" analysis which ought, ideally, not be the driver of our decision on the trial flaws

17

he has alleged and on which almost inevitably, as happened in this case, the defendant will lose. Trial counsel's failure to act competently in this regard clearly prejudiced the defendant, just not in the manner required by our courts. He was prejudiced because we, unlike the jurors who would have made the assessment at trial, have extensive legal training and experience that lead us to conclude, incongruously considering the existence and stated importance placed on Rule 431(b), that being properly instructed on the rules guiding how they hear and weigh evidence could not have changed the outcome of the trial.