2022 IL App (2d) 200672
No. 2-20-0672
Order filed May 10, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Kane County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18-CM-156 |
| | ) | |
| JARID P. LEANNAH, | ) | Honorable |
| | ) | Robert K. Villa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices Jorgensen and Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held:* The Appellate Court affirmed the defendant's conviction of domestic battery where the admission of a recording of an altercation between the defendant and the victim, if error, was harmless.

¶ 2    Defendant, Jarid P. Leannah, appeals his convictions for domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2018)) following a bench trial. We affirm.

¶ 3                                I. BACKGROUND

¶ 4    On February 21, 2018, the Kane County State's Attorney charged defendant in an amended complaint with two counts of domestic battery. The alleged victim was Jessica Duquette. Count I alleged that, on or about January 20, 2018, defendant made contact of an insulting or provoking nature with Duquette, and count II alleged that defendant caused bodily harm to Duquette. The incident giving rise to these charges consisted of a verbal and physical altercation during which Duquette sustained bruising.

¶ 5    Duquette recorded the incident on her cell phone without defendant's knowledge or consent. Prior to trial, defendant filed a motion *in limine* to suppress the recording as violative of the Illinois eavesdropping statute (720 ILCS 5/14-1 *et seq.* (West 2018)). The court admitted the recording[1] pursuant to the "fear-of-crime" exemption contained in section 14-3(i) of the statute (720 ILCS 5/14-3(i) (West 2018)).

¶ 6    At trial, the State presented the following evidence.

¶ 7                          A. Jessica Duquette

¶ 8    Duquette testified that she and defendant had been dating for several years and were living together in a home in Batavia. Around midnight on January 19, 2018, she and defendant went to a bar called Bulldog's, where defendant consumed five alcoholic beverages. According to Duquette, defendant was rude and disrespectful toward her inside the bar. Duquette testified that, when defendant drank, he generally became aggressive, rude, and disrespectful toward her.

¶ 9    Duquette testified that she began recording defendant with her cell phone while they were driving home because defendant became "disagreeable" and accused her of cheating on him. She

_____

[1] Duquette made two recordings. The State did not offer the first recording into evidence. When we use the term "recording," we refer to the second recording.

stopped the recording when defendant "ripped" the phone out of her hand.[2] She began recording again as soon as he gave the phone back to her. Duquette testified that defendant slapped her and rolled the vehicle's window up on her arm several times, although she did not remember whether those acts occurred during the first or second recording. Duquette testified that she made both recordings "to show [defendant] how he treated me when he consumed alcohol and he acted like that." Duquette testified, "I didn't realize that it would be something I would need to use besides that." Duquette testified that she hoped that the physical abuse would stop, but she was not sure that it would.

¶ 10    Duquette testified that, after they arrived home and entered the house, defendant shoved her head into a wall. Then, defendant shoved Duquette into a door and grabbed her hair. Then, defendant's brother, Jason Leannah, and his and defendant's brother-in-law, Austin Rattenbury, arrived. According to Duquette, defendant continued to push and pull her and drag her around. Duquette fell to the ground. While this was happening, Duquette's cell phone was on a kitchen counter, recording the events.[3] Duquette testified that the phone stopped recording when defendant took it, along with Duquette's keys.

¶ 11    The recording shows the following. We catch occasional glimpses of Duquette in the front passenger seat of defendant's vehicle. Her eyes are closed unless she is lighting cigarettes and smoking. Defendant and Duquette sound intoxicated. During the drive, defendant accuses Duquette of spreading rumors about him and attending parties where other men are present. Defendant repeatedly threatens to throw Duquette out of his house. Duquette responds in a flat

---

[2] Duquette also testified that defendant stopped the first recording.

[3] The phone recorded audio only because the phone's camera was pointed at the ceiling.

monotone that she is not leaving the house. At one point, defendant's hand is visible, and Duquette accuses him of slapping her. Duquette also protests loudly when she says that defendant has rolled the window up on her arm. Defendant calls Duquette demeaning names, including "retarded," and Duquette is heard crying. During the ride, Duquette says, "Stop treating me like this every time you get drunk." When they arrive at the house, defendant raises his voice and increases his profanity-laced threats to throw Duquette out of the house. Defendant makes low growling sounds. Duquette's crying becomes hysterical, and she accuses defendant of shoving her head into a wall and ripping out her hair. Duquette cries, "Stop, don't hurt me," and "Let go of me." Leannah and Rattenbury arrive approximately 23 minutes into the recording. Although Leannah's voice is barely discernible, Duquette addresses him by name and engages him in conversation about what just happened. A voice says that defendant has bruised knuckles. Duquette tells Leannah and Rattenbury what defendant has done to physically abuse her. Defendant says, "Yeah, I dragged you by your hair 'cause you're a f– idiot." Defendant also states that, if Duquette will not listen to him, "I have the right to physically remove you" from the home.

¶ 12    The first time that the State moved to admit the recording into evidence, the court advised the prosecutor that her line of questioning as to why Duquette made the recording "needs to be deeper." The court noted that Duquette did not testify that "she believed that she was in danger of physical harm ***." In admitting the recording into evidence following Duquette's resumed testimony, the court found that defendant committed a battery when he "ripped" the phone out of Duquette's hand. The court concluded, based on Duquette's testimony that she was not sure that the physical abuse would stop, that Duquette made the recording because she had "some reasonable suspicion" that further physical abuse would occur.

¶ 13                                    B. Officer Thrun[4]

¶ 14    The State's second witness was Officer Thrun of the Batavia Police Department. Thrun testified that he responded to a domestic violence call at defendant's address on the morning of January 20, 2018. He knew that Duquette was the alleged victim and that she was driving a blue Jeep. When Thrun spotted the Jeep, he effected a traffic stop. According to Thrun, Duquette was "very upset, very emotional, and crying." At the police station, Thrun observed "small scratches and bruises" and red marks on Duquette's arms and legs. Thrun testified that Duquette's injuries were consistent with her story that those scratches and bruises had been inflicted the previous night. However, on cross-examination, Thrun conceded that he did not know when the scratches and bruises were inflicted.

¶ 15    Following Thrun's testimony, the State rested, and the court denied defendant's motion for a directed finding. The court admonished defendant with respect to his right to testify, and defendant elected not to testify. Defendant then presented two witnesses.

¶ 16                                    C. Jason Leannah

¶ 17    Leannah is defendant's brother. Leannah testified that he was with his brother-in-law, Rattenbury, at Bulldog's in the early morning hours of January 20, 2018. According to Leannah, he did not see defendant and Duquette there. Leannah and Rattenbury left Bulldog's at 2 a.m. and went to defendant's home.

¶ 18    Leannah testified that while he was on the sidewalk outside defendant's home, he heard defendant and Duquette yelling "at the back door." Leannah also testified that defendant and Duquette were yelling in the backyard. Leannah testified that the back door to the house was

---

[4] Throughout the record, this witness is referred to as "Officer Thrun," with no first name.

located by the driveway. The back door was open. Leannah testified that he stood in the driveway, watching the commotion. Leannah testified that Duquette hit defendant with a vacuum cleaner and a printer. Leannah testified that Duquette was kicking defendant and "basically doing anything to harm him." According to Leannah, he did not see defendant hit, grab, or push Duquette. Leannah testified that Duquette injured her knee when she crawled between defendant's legs to get to a bedroom. Leannah described Duquette as "very angry" and intoxicated. According to Leannah, he did not see defendant shove Duquette's head into a wall, slap her, or grab her hair. Leannah testified that he tried to break up the fight, but Duquette "just would not listen." According to Leannah, Rattenbury calmed Duquette down for a little while but then Duquette started fighting with defendant again.

¶ 19                                 D. Austin Rattenbury

¶ 20    Rattenbury testified that he rented a room in defendant's basement on January 20, 2018. On that date, when he returned to defendant's home from Bulldog's, he saw defendant and Duquette. Rattenbury testified that he did not see defendant engage physically with Duquette. According to Rattenbury, defendant stood in the doorway while Duquette kept shoving defendant. Rattenbury acknowledged that everyone present was intoxicated. According to Rattenbury, he calmed Duquette down in his basement room for approximately 20 minutes and then she "comes back upstairs and starts all up again." Rattenbury testified that he did not see defendant strike, shove, push, grab, or drag Duquette "in any way."

¶ 21    Following Rattenbury's testimony, defendant rested, and the State presented no rebuttal. The court found defendant guilty on both counts of the amended complaint. After trial, defendant's private counsel withdrew, and the Kane County Public Defender's office was appointed to represent defendant. The assistant public defender filed a posttrial motion, arguing, in pertinent

part, that Duquette's testimony did not meet the requirements for admission of the recording pursuant to the "fear-of-crime" exemption to the eavesdropping statute. The court denied the posttrial motion. The court sentenced defendant to 18 months' probation and 90 days in the Kane County jail, which was stayed pending defendant's compliance with certain conditions. Defendant appeals.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant raises two issues on appeal: (1) one of the convictions must be vacated under the one-act, one-crime doctrine and (2) the court erred in admitting the recording.

¶ 24                              A. One Act, One Crime

¶ 25    Count I of the amended complaint charged defendant with domestic battery in that defendant made physical contact with Duquette of an insulting or provoking nature. Count II charged that defendant committed domestic battery by causing Duquette bodily harm. Both counts were predicated on the events of January 20, 2018. At trial, the court found defendant guilty on both counts. The judgment order shows that defendant was convicted and sentenced on both counts. Defendant contends that his conviction on the count alleging insulting or provoking contact must be vacated.

¶ 26    When multiple convictions of greater and lesser offenses are entered for offenses arising from a single act, a sentence should be imposed on the most serious offense, and the conviction on the less serious offense must be vacated. *People v. Garcia*, 179 Ill. 2d 55, 71 (1997). Here, the State charged and prosecuted this case under alternate theories to prove the single crime of domestic battery. Defendant argues, and the State concedes, that defendant's conviction for the less serious crime of insulting-or-provoking domestic battery should be vacated. See *People v. Young*, 362 Ill. App. 3d 843, 853 (2005) (insulting or provoking battery is a less serious offense

than bodily harm battery). We agree. Accordingly, we vacate defendant's conviction for domestic battery on count I of the amended complaint.

¶ 27         B. Whether the Recording Was Properly Admitted Into Evidence

¶ 28    A person commits eavesdropping when he or she knowingly and intentionally uses an eavesdropping device, in a surreptitious manner, for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party unless he or she does so with the consent of all other parties to the private conversation. 720 ILCS 5/14-2(a)(2) (West 2018). "Private conversation" means any "oral communication between two or more persons, when one or more of the parties intended the communication to be of a private nature under circumstances reasonably justifying that expectation." 720 ILCS 5/14-1(d) (West 2018). Prior to 2014, the Act prohibited a person from knowingly and intentionally recording any conversation between two or more people without the consent of all parties to the conversation. 720 ILCS 5/14-2 (West 2012). In March 2014, our supreme court in *People v. Clark*, 2014 IL 115776, and *People v. Melongo*, 2014 IL 114852, held that the two-party consent requirement was unconstitutionally overbroad, as the statute criminalized the recording of conversations that were not private. The legislature then amended the Act to apply to communications in which one or more parties is reasonably justified in expecting the conversation to be private. P. A. 98-1142 (eff. Dec. 30, 2014) (amending 720 ILCS 5/14-1(d) (West 2012).

¶ 29    At trial, the State maintained that the recording was properly admitted pursuant to the "fear-of-crime" exemption to eavesdropping. Section 14-3(i) of the Act provides that the following activity is exempt:

"Recording of a conversation made by or at the request of a person, not a law
enforcement officer or agent of a law enforcement officer, who is a party to the

- 8 -

conversation, under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14-3(i) (West 2018).

¶ 30                                    1. *Standard of Review*

¶ 31     Initially, the parties disagree on the standard of review. Defendant argues that it is *de novo*, inasmuch as he sought to suppress evidence that was allegedly illegally obtained. A court's ruling on a motion to suppress is subject to a mixed standard of review. *People v. Veal*, 2017 IL App (1st) 150500, ¶ 10. While the court's factual findings are given deference, the ultimate legal question of suppression is reviewed *de novo*. *Veal*, 2017 IL App (1st) 150500, ¶ 10. The State argues that, because defendant raised this issue in a motion *in limine*, the proper standard of review is abuse of discretion. See *People v. Robinson*, 368 Ill. App. 3d 963, 974 (2006) (courts review trial court's rulings on a motion *in limine* for abuse of discretion).

¶ 32     Section 14-5 of the Act provides that "any evidence obtained in violation of this Article is not admissible in any civil or criminal trial ***." 720 ILCS 5/14-5 (West 2018). "The key to inadmissibility under section 14-5 is that the evidence must be obtained as a result of illegal eavesdropping activity." *People v. Davis*, 2020 IL App (3d) 190272, ¶ 12. "Illegal eavesdropping activity" means either that (1) the evidence itself is an illegal recording of a conversation or (2) illegal eavesdropping led investigators to inculpatory evidence. *Davis*, 2020 IL App (3d) 190272, ¶ 12.

¶ 33     The State relies on *People v. Webb*, 2021 IL App (3d) 180699-U, ¶ 30, where the court reviewed for abuse of discretion the trial court's denial of a motion *in limine* to exclude audio and

visual recordings as violative of the eavesdropping statute. However, the basis for the motion *in limine* in *Webb* was that the assistant state's attorney who authorized the overhear did not have authority to do so. *Webb*, 2021 IL App (3d) 180699, ¶ 28. Thus, *Webb* did not involve section 14-5 of the Act. Also, *Webb* cited *People v. Williams*, 188 Ill. 2d 365, 369 (1999), which noted that a "motion *in limine* is addressed to the trial court's inherent power to admit or exclude evidence." In *Williams*, the evidence that was excluded pursuant to a motion *in limine* was the defendant's prior guilty plea. *Williams*, 188 Ill. 2d at 368. Here, resolving whether the recording is admissible would require us to interpret section 14-5 of the Act, which is subject to *de novo* review. *Davis*, 2020 IL App (3d) 190272, ¶ 10.

¶ 34          2. *Whether the "Fear-of-Crime" Exemption to Eavesdropping Applies*

¶ 35     The fear-of-crime exemption to eavesdropping permits unconsented recordings where (1) the person making the recording is a party to the conversation, (2) he or she is under a "reasonable suspicion" that another party to the conversation is committing, has committed, or is about to commit a crime, and (3) the recording may yield evidence of a criminal offense. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The exemption requires (1) a subjective suspicion that criminal activity is afoot and (2) an objective determination that the suspicion was reasonable. *Carroll*, 698 F.3d at 566.

¶ 36     Here, the court concluded that Duquette made the recording because she had "some reasonable suspicion" that defendant would perpetrate further physical abuse after he ripped the phone out of her hand. Defendant argues that the court misapplied section 14-3(i) because (1) Duquette did not make the recording under a reasonable suspicion that an offense had been committed against her and (2) Duquette did not testify that she believed recording defendant would produce evidence of a crime. Rather, defendant argues, Duquette testified that she recorded

defendant to show him how he treated her when he was drunk. Defendant relies on *People v. Nestrock*, 316 Ill. App. 3d 1, 9 (2000), where we held that a recording of a telephone conversation with the defendant should have been barred because neither of the parties making the recording had any suspicion that the defendant was about to commit a crime.

¶ 37    The State argues that the section 14-3(i) exemption applies because, when Duquette made the recording, "she was under the reasonable suspicion that defendant's conduct was disorderly, and, therefore, defendant was breaching the peace as a result of his intoxication." Alternatively, the State contends that admission of the recording was harmless error.

¶ 38    We need not decide the applicability of sections 14-5 or 14-3(i) because we agree with the State that, if error occurred in the admission of the recording, it was harmless. "A nonconstitutional evidentiary error is harmless if there is no reasonable probability that the [trier of fact] would have acquitted the defendant absent the error." *People v. Forrest*, 2015 IL App (4th) 130621, ¶ 57; *People v. McBride*, 2020 IL App (2d) 170873, ¶ 33 (where the error is not structural and harmless-error analysis is proper, the State must persuade the reviewing court that the verdict would have been the same absent the error.)

¶ 39    Here, Duquette testified to defendant's physical abuse both inside the vehicle and the home. When Officer Thrun encountered Duquette later that morning, she was crying and upset, and he observed bruises on her arms and legs that were consistent with her complaint that defendant had abused her. Photographs in evidence documented those injuries. According to Leannah's testimony, he heard defendant and Duquette yelling while he was still outside on the sidewalk and then on their driveway. At one point, Leannah testified that defendant and Duquette were yelling in the backyard. Leannah also testified that they were at the back door. According to

Leannah, the back door to the house, which was at the driveway, was open. Rattenbury testified that defendant was standing in the doorway.

¶ 40    During the argument before the trial court, defense counsel agreed with the State that defendant's expectation of privacy in the conversation with Duquette ended when Leannah and Rattenbury came on the scene. This concession limited defendant's objection in the trial court to the recorded portion of the conversation that occurred prior to the arrival of Leannah and Rattenbury. At oral argument, defense counsel twice agreed that trial counsel made such a concession and does not argue the propriety of the concession on appeal. The record shows that after Leannah and Rattenbury arrived, defendant stated: "Yeah, I grabbed your (Duquette's) hair 'cause you're a f– idiot." Defendant also stated that, if Duquette would not listen to him, he had the right to physically remove her from the residence. Additionally, during this admittedly non-private portion of the recording, Duquette tearfully catalogued all of the violent acts that defendant had just committed, and someone commented that defendant had bruised knuckles. As noted, later that morning, Thrun observed bruises on Duquette's arms and legs and documented those injuries. Thus, we conclude that any error in admitting the portion of the recording before Leannah and Rattenbury arrived was harmless because the verdict would have been the same absent the error.

¶ 41    Even without trial counsel's limited objection, and assuming, without deciding, that it was error to admit the entire recording, we believe such error would be harmless. The court found Duquette credible in finding that defendant committed a battery when he ripped the phone out of Duquette's hand. The court also relied on Duquette's testimony that she hoped the abuse would stop. Thus, the court indicated that it believed her testimony about what occurred inside the vehicle. Leannah's and Rattenbury's testimony did not contradict Duquette. They were not present inside the vehicle when defendant slapped Duquette and squeezed her arm in the window. Leannah and

Rattenbury testified that they did not see defendant physically assault Duquette at the house. Although both Leannah and Rattenbury testified that Duquette was the aggressor, they were related to defendant, drunk at the scene, and Rattenbury was living in defendant's home. When Thrun encountered Duquette, she was upset and crying, and her bruises were consistent with the attack that she described at defendant's hands.

¶ 42                                III. CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

¶ 44    Affirmed.