2016 IL App (3d) 140203

Opinion filed March 28, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-14-0203 |
| v. | ) | Circuit No. 12-CF-1245 |
| | ) | |
| ELTON EFFINGER, | ) ) | Honorable Daniel J. Rozak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1      Defendant, Elton Effinger, appeals from his conviction for aggravated battery. On appeal, defendant argues that his conviction should be reversed and remanded for a new trial because: (1) evidence that defendant was "grooming" the victim was inadmissible; and (2) the State improperly vouched for the victim's credibility during its closing and rebuttal arguments. We affirm.

¶ 2                                    FACTS

¶ 3    Defendant was charged by indictment with aggravated battery (720 ILCS 5/12-3.05(c), 12-3(a) (West 2012)), and the case proceeded to a jury trial.

¶ 4    The victim testified that on the morning of May 29, 2012, she left her home and began walking to school. Approximately two houses from her home, she saw defendant walking his dogs. Defendant said hello and asked if the victim was going to high school. The victim said that she was going to middle school. In the past, defendant had said good morning to the victim, but he did not approach her or make any other statements. Defendant crossed the street and approached the victim. Defendant said his name was "Steve," and he asked the victim several questions that included whether the victim took the bus to school, had a cell phone or used social media. Defendant's questions made the victim feel uncomfortable. Defendant told the victim that he had been watching her since she moved into the neighborhood. Defendant said the victim was pretty and that she should hang out after school at the park. Defendant asked the victim when her birthday was and suggested that he could buy her a gift.

¶ 5    Along the route, defendant grabbed the victim's left hand. Defendant asked if the victim was uncomfortable, and when the victim said yes, defendant released her hand. Afterwards, defendant asked the victim if she thought he was attractive. The victim said she did not know. Defendant also shared stories about his childhood as he walked with the victim toward the school. Near the school, defendant told the victim to keep their conversation and his actions a secret. At school, the victim told the assistant principal about the incident.

¶ 6    Jody Ellis testified that she was the assistant principal at Hubert H. Humphrey Middle School. On the morning of May 29, 2012, the victim came to her office. The victim appeared scared, and she told Ellis that a man had walked with her on the way to school, and the man grabbed her hand along the way. The victim said that the man told her that he had been watching

2

the victim and that the victim was beautiful. Ellis contacted the police officer assigned to the school because she felt that the victim was "being groomed by an older male." The State asked Ellis to explain what she meant by "groomed." Defense counsel objected as to the relevancy of the testimony and, after a sidebar, the court overruled the objection. Ellis testified that grooming was "[w]hen somebody is trying to make somebody feel comfortable so that they can work their way into them emotionally."

¶ 7    Bolingbrook Police Detective Christopher Georgeff testified that he investigated the incident after the victim spoke to the officer assigned to the school. On the afternoon of May 29, 2012, Georgeff went to defendant's residence where he spoke with defendant's mother. At the time, Georgeff did not see defendant. In the evening, defendant came to the Bolingbrook police department where he spoke with Georgeff and another detective. Defendant told Georgeff that earlier in the day he was walking his dogs with his girlfriend. One of defendant's dogs ran up to the victim. Defendant approached the victim, retrieved his dog, apologized for the disturbance and walked away. Georgeff said that defendant was "persistent in telling [him] that he did not touch" the victim. Georgeff noted that defendant was cooperative throughout the interview. At the conclusion of the interview, defendant was allowed to leave the police station.

¶ 8    Jan Williams testified that on May 31, 2012, she was flagged down by police officers near a Bolingbrook school. An officer showed Williams some photographs of a young girl and a man. Williams told the officer that she saw these individuals walking together on May 29, 2012, near the school. Williams identified the man as defendant. Williams did not see any physical contact between the girl and defendant.

¶ 9    Melanie Muench-Day testified that on May 31, 2012, she was flagged down by a Bolingbrook police officer. The officer showed her a photograph of a man that Muench-Day had

3

seen alone, walking his dogs, near the school on May 29 or May 30, 2012. Muench-Day identified the man in the photograph as defendant. On cross-examination, Muench-Day said that she did not see a young girl with defendant.

¶ 10      Robert Ralston testified that he lived near the victim's family. On May 31, 2012, a Bolingbrook police officer asked Ralston to look at photographs of two people. Ralston recognized the individuals in the photographs as residents of his neighborhood. Ralston had seen the two individuals walking down the street together a few days before he spoke to the police. Ralston identified one of the individuals as defendant, and the second individual as the girl (the victim) who lived in a house near him.

¶ 11      Bolingbrook Police Officer Andrew Sraga testified that on the evening of October 2, 2012, he stopped a vehicle that had an expired registration. A passenger in the vehicle said his name was "Steven Henderson." Sraga subsequently determined that Henderson's real name was Elton Effinger. Sraga identified Effinger as the defendant in this case.

¶ 12      The defense did not present any evidence, and the case proceeded to closing arguments. The State argued that "there were no motives that were established for [the victim] to be untruthful." The State also said "I will put forth that [the victim] was credible and you should believe her." In rebuttal, the State argued that "we believe [the victim is] credible, that she told—everything she said was completely credible and makes perfect sense as to how everything happened."

¶ 13      The court instructed the jury that closing arguments are not "evidence and any statement or argument made by the attorneys, which is not based on the evidence, should be disregarded." The court also instructed the jury that "[o]nly you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them."

4

¶ 14     The jury found defendant guilty of aggravated battery. Defendant filed a motion for new trial. After a hearing, the trial court denied defendant's motion and sentenced defendant to 10 years' imprisonment. Defendant appeals.

¶ 15                                        ANALYSIS

¶ 16                                        I. Evidence

¶ 17     Defendant argues that the trial court abused its discretion when it admitted evidence that defendant was "grooming" the victim because this evidence was irrelevant to the charged offense. After reviewing the record, we find that the grooming evidence was irrelevant, but any error in admitting it was harmless.

¶ 18     Generally, evidence is admissible if it is relevant. *People v. Begay*, 377 Ill. App. 3d 417, 421 (2007). Relevant evidence tends to make the existence of any fact in consequence more or less probable than it would be without the evidence. *Id.* The decision to admit evidence lies within the discretion of the trial court. *People v. Harris*, 231 Ill. 2d 582, 588 (2008). "[T]he admission of irrelevant evidence is harmless error if no reasonable probability exists that the verdict would have been different had the irrelevant evidence been excluded." *People v. Lynn*, 388 Ill. App. 3d 272, 282 (2009).

¶ 19     In the instant case, defendant was charged with aggravated battery. The charge alleged that he made contact of an insulting or provoking nature with the victim while she was on a public way. 720 ILCS 5/12-3.05(c), 12-3(a) (West 2012). Ellis's testimony that she thought the victim was being "groomed" did not establish any of the elements of aggravated battery. As a result, this evidence was erroneously admitted; however, its admission was harmless error as the properly admitted evidence established the elements of the charged offense.

5

¶ 20    The testimony provided by the victim, Williams and Ralston established that the victim and defendant were together on a public sidewalk. The victim also testified that defendant made contact with her while on the sidewalk. While the victim's testimony stands alone in establishing the contact element, the credible testimony of a single witness is sufficient to sustain defendant's conviction. See *People v. Williams*, 252 Ill. App. 3d 1050, 1060 (1993) ("[t]he testimony of one witness if credible and positive is sufficient to convict, even if contradicted by the accused"). Moreover, evidence that defendant provided the victim and police with a false name evidenced a consciousness of guilt. See *People v. Harris*, 225 Ill. 2d 1, 23 (2007). We therefore conclude that any error in the admission of the grooming evidence was harmless as no reasonable probability existed that the verdict would have been different if this irrelevant evidence was excluded.

¶ 21                                    II. Closing Argument

¶ 22    Defendant also argues that the State improperly vouched for the victim's credibility during its closing and rebuttal arguments. Defendant acknowledges that he forfeited review of this issue, but argues that it is reversible under the first prong of the plain error doctrine (closely balanced). Upon review, we find that the State's comments were error, but the evidence was not so close that the error threatened the outcome of the proceedings.

¶ 23    The plain error rule bypasses a defendant's forfeiture and allows a reviewing court to consider an unpreserved claim of error. *People v. Adams*, 2012 IL 111168, ¶ 21. The first step of plain error review is to determine whether the trial court erred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Where error is found, the defendant must then show that " 'the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him.' " *Adams*, 2012 IL 111168, ¶ 21 (quoting *People v. Herron*, 215 Ill. 2d 167, 187 (2005)).

"In determining whether the closely balanced prong has been met, we must make a 'commonsense assessment' of the evidence [citation] within the context of the circumstances of the individual case." *Id.* ¶ 22 (quoting *People v. White*, 2011 IL 109689, ¶ 139).

¶ 24        Prosecutors are generally afforded wide latitude in closing argument. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007).  A prosecutor may express an opinion based on the record, and may draw reasonable inferences from the evidence presented; however, a prosecutor may not vouch for the credibility of a government witness or use the credibility of the State's Attorney's office to bolster a witness's testimony. *People v. Williams*, 2015 IL App (1st) 122745, ¶¶ 12, 26.

¶ 25        In the present case, we find that the State impermissibly vouched for the victim's credibility when it argued that the victim "was credible and you should believe her," and "we believe [the victim is] credible."  The State further erred when it said in its rebuttal argument that "we believe [the victim is] credible, that she told—everything she said was completely credible and makes perfect sense as to how everything happened."

¶ 26        While the State's comments during closing arguments were error, we do not find that the evidence is closely balanced.  As discussed above, the direct evidence of the charged offense was limited to the victim's testimony.  However, the circumstantial evidence–testimony of Williams and Ralston, along with defendant's consciousness of guilt–supported the victim's version of events and readily established defendant's commission of the charged conduct.  Therefore, applying a commonsense assessment, we conclude that this evidence was not closely balanced. Additionally, the jury was instructed that counsel's arguments were not evidence and that only they were the "judges of the believability of the witnesses and of the weight to be given to the testimony."  "Given these circumstances, we cannot conclude that the prosecutor's erroneous statements 'severely threatened to tip the scales of justice against' defendant [citation], so as to

7

satisfy the closely balanced prong of plain-error review." *Adams*, 2012 IL 111168, ¶ 23 (quoting *Herron*, 215 Ill. 2d at 187).

¶ 27                                   CONCLUSION

¶ 28        The judgment of the circuit court of Will County is affirmed.

¶ 29        Affirmed.

¶ 30        JUSTICE McDADE, dissenting.

¶ 31        I respectfully dissent from the majority's resolution of the second issue and affirmance of defendant's conviction. While I agree that the State impermissibly vouched for the victim's credibility during its closing and rebuttal arguments, unlike the majority, I find that the evidence was so closely balanced that this error is reversible plain error. I also disagree with the closely balanced analysis applied by the majority. After reviewing *Herron* and its progeny, I believe that the closely balanced analysis requires that the error be considered in context with the evidence to determine if defendant suffered prejudice.

¶ 32        Illinois Supreme Court Rule 615(a) provides when a reviewing court may address contentions of error not preserved at the trial level. The rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a). In *People v. Keene*, 169 Ill. 2d 1, 18 (1995), our supreme court recognized that despite the Rule 615(a) plain error clause, which covered errors affecting substantial rights, "the threshold concern is just as often as not whether the evidence presented was 'closely balanced.' The reason: the strength or weakness of inculpatory evidence has long been seen as relevant to ignoring procedural defaults in remedying occasioned injustice." Thus, the supreme court observed that from the plain language of Rule 615(a), a disjunctive approach to plain error analysis had "evolved." *Id*. Under this disjunctive approach,

the court held, a procedural default may be excused when either of the following two conditions are met: (1) "the error affected 'substantial rights,' " or (2) "independent of the nature of the right affected, *** the evidence in the case was closely balanced." *Id*. These two conditions have come to be known as the two prongs of plain error. See, *e.g.*, *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010). In *Keene*, the court applied this disjunctive approach to an unpreserved prior consistent statements issue, concluding both that the argument did not implicate a substantial right and the evidence was not "closely balanced." *Keene*, 169 Ill. 2d at 18-19.

¶ 33    The closely balanced prong has developed since *Keene* to allow a reviewing court to consider unpreserved errors when "the evidence is so closely balanced ***, regardless of the seriousness of the error." *People v. Belknap*, 2014 IL 117094, ¶ 48. However, this approach of considering the evidence in isolation is not the sole method employed by the supreme court. The supreme court has also said that a reviewing court may remedy a clear or obvious error, regardless of a defendant's forfeiture, where "the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence." *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009).

¶ 34    These competing formulations, while facially similar, actually present two distinct ways of conducting the closely balanced analysis. The "regardless of the seriousness of the error" language suggests that "closely balanced" is a binary proposition. In other words, evidence either is or is not closely balanced, in a vacuum. The latter language—"the evidence in the case is *so* closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence" (emphasis added) (*id.*)—implies that there are varying degrees of closely balanced, and that it is the error itself that dictates *how* closely balanced the evidence must be to warrant relief. See also *People v. Piatkowski*, 225 Ill. 2d 551, 568 (2007) (finding evidence "*sufficiently*

9

closely balanced so as to require a remand for a new trial" (emphasis added)). In sum, the latter formulation necessitates consideration of the gravity of the error committed while the former explicitly rules it out. For the reasons that follow, I find that the latter formulation is the more logical recitation.

¶ 35    The necessity of my conclusion is illustrated by the oft-quoted but contradictory case of *Herron*, 215 Ill. 2d at 178, 187. Not only did the *Herron* court reference each of the above two formulations of the closely balanced prong, it also described the closely balanced prong in a *third* way, stating that a defendant must show "that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him." *Id*. at 187. This formulation, like the latter formulation above, calls for analysis of the closeness of the evidence in the context of the error committed. It asks not whether the evidence is closely balanced in a vacuum, but whether the evidence is close enough that *the error actually committed* may have affected the outcome at trial.

¶ 36    Since *Herron*, each formulation of the closely balanced prong has been cited with approval by our supreme court. *E.g.*, *People v. Alsup*, 241 Ill. 2d 266, 275-76 (2011) ("[T]he evidence is closely balanced, regardless of the seriousness of the error ***."); *In re Jonathon C.B.*, 2011 IL 107750, ¶ 70 ("[T]he evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant."); *McLaurin*, 235 Ill. 2d at 489 (plain error doctrine allows reviewing court to address forfeited errors "where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence"). These multiple formulations, though contradictory, also appear in concert with one another. *E.g.*, *Belknap*, 2014 IL 117094, ¶ 48 ("[T]he evidence is so closely balanced that *the*

*error alone* threatened to tip the scales of justice against the defendant, *regardless of the seriousness of the error ***.*" (Emphases added.)).

¶ 37 In some instances, even where the supreme court has recited the "regardless of the seriousness" language, the court has nevertheless looked to the nature of the error committed. In *Adams*, 2012 IL 111168, ¶ 16, for example, the defendant argued that the prosecutor had made a number of improper statements to the jury during closing arguments. *Id*. The court opened its plain error analysis by stating that a reviewing court may consider an unpreserved error when " 'the evidence is close, regardless of the seriousness of the error.' " *Id.* ¶ 21 (quoting *Herron*, 215 Ill. 2d at 187). However, after reviewing the evidence, the court's analysis explicitly looked to the nature and magnitude of the error, as well as its effect on the trial: "[T]he jury was properly instructed that counsel's arguments were not evidence and that only they were the 'judges of the believability of the witnesses.' In addition, the prosecutor's comments, though improper, were not of a sort likely to inflame the passions of the jury." *Id*. ¶ 23. The court tied its holding directly to the error, stating: "[W]e cannot conclude that the prosecutor's erroneous statements 'severely threatened to tip the scales of justice against' defendant ***." *Id*. (quoting *Herron,* 215 Ill. 2d at 187).

¶ 38 Similarly, in *Piatkowski*, the supreme court reiterated that:

"the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, *regardless of the seriousness of the error.*" (Emphasis added.) *Piatkowski*, 225 Ill. 2d at 565.

11

¶ 39   In that case, the error in question was an erroneous jury instruction regarding identification by a witness—the same error considered in *Herron*. *Id*. at 562-63. After finding that the jury instruction was erroneous, the *Piatkowski* court described the next step: "[D]efendant must meet his burden to show that the error was prejudicial—in other words, he must show that the quantum of evidence presented by the State against the defendant rendered the evidence 'closely balanced.' " *Id*. at 566 (quoting *Herron*, 215 Ill. 2d at 193). In determining if the defendant had met this burden, the court focused its analysis on the evidence relating to witness identification. *Id*. at 567-68. The court identified five factors for assessing the reliability of witness identification (see *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)), and concluded that "the evidence presented on these five factors did not overwhelming favor the State." *Piatkowski*, 225 Ill. 2d at 568 (finding the evidence was "*sufficiently* closely balanced so as to require a remand for a new trial" (emphasis added)). Thus, the parameters of the court's closely balanced analysis were plainly set by the nature of the error in question.

¶ 40   Consideration of the magnitude of the error accords with the principle that plain error turns on the question of prejudice. It is well settled that second-prong errors—now defined as structural errors (*Thompson*, 238 Ill. 2d at 608-09)—are those errors that are so serious that prejudice to the defendant is presumed. *Id*. at 613; *Piatkowski*, 225 Ill. 2d at 565; *Herron*, 215 Ill. 2d at 187. Likewise, in the context of the closely balanced prong, the defendant must demonstrate that he or she was prejudiced by an error. *E.g.*, *Piatkowski*, 225 Ill. 2d at 566; see also *Herron*, 215 Ill. 2d at 185 ("In Illinois, there are two categories of plain error: prejudicial errors—errors that may have affected the outcome in a closely balanced case—and presumptively prejudicial errors—errors that may not have affected the outcome, but must still be remedied."). An analysis of prejudice that fails to contemplate the magnitude of the error is

12

necessarily incomplete. Even where evidence may be "closely balanced," it remains possible that the error committed is quite minor or technical, to the point that the defendant suffered no actual prejudice from it.

¶ 41    The *Adams* and *Piatkowski* decisions illustrate the difficulties inherent in finding prejudice by looking at the evidence in isolation. Viewed in isolation, the evidence alone cannot completely describe the prejudicial effect because serious errors have more far reaching effects on the outcome of a case than lesser errors. Stated another way, greater errors are more likely to prejudice the outcome in any case than lesser errors. Thus, the decisions in *Adams* and *Piatkowski* tend to implicate the application of a sliding scale whereby the magnitude of the error is implicitly considered in combination with the closeness of the evidence. In other words, the magnitude of the error dictates how closely balanced the evidence must be for that error to be deemed prejudicial.

¶ 42    A contextualized closely balanced analysis also eliminates the difficult task of strictly defining the nebulous concept of "closely balanced." When the magnitude of the error is not considered, "closely balanced" is a state of existence that every case either is or is not. Naturally, this has led to some difficulties in applying the concept. Compare *Piatkowski*, 225 Ill. 2d at 568 (finding evidence closely balanced where it "did not overwhelmingly favor the State") with *Belknap*, 2014 IL 117094, ¶¶ 55-62 (finding evidence not closely balanced where only direct evidence of the defendant's involvement in the offense came from inherently unreliable jailhouse informants). On the other hand, consideration of the error in the context of the evidence eliminates this problem by defining "closely balanced" in terms of the error actually committed; a court must simply ask if "the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence." *McLaurin*, 235 Ill. 2d at 489.

13

¶ 43 Consideration of the actual effect of the error places the closely balanced prong in congruence with harmless error analysis. See *People v. Johnson*, 218 Ill. 2d 125, 141 (2005) (noting that plain error analysis requires the same kind of inquiry as harmless error review). In plain error and harmless error analyses, the relevant inquiry turns on "whether the error is so substantial that it undermines our confidence in the jury verdict." *Id.* Unlike a plain error analysis, harmless error applies to preserved errors, and the State bears the burden to prove prejudice. *People v. Thurow*, 203 Ill. 2d 352, 363 (2003). The State must prove that the jury verdict would have been the same absent the error. *Id.* Conversely, under a closely balanced plain error analysis, defendant bears the burden of showing prejudice. *E.g.*, *Piatkowski*, 225 Ill. 2d at 566. Thus, the effect of the error on the evidence must be considered under both analyses.

¶ 44 If plain error required that a court of review only consider the evidence in isolation, a defendant in a close case would be better off intentionally failing to preserve a minor error and raising a closely balanced challenge. If the minor error was preserved, the State might easily prove on appeal that the error was not prejudicial to the defendant, and thus harmless. However, if the error was unpreserved, defendant could attain relief simply by showing that the evidence was closely balanced, without regard for the *actual* impact of the error. Though this possibility would only arise in a narrow subset of cases—where the evidence was perceived to be close and the error was minor—the result that a defendant would benefit from failing to preserve an error is a result surely not intended by our supreme court.

¶ 45 In light of the above reasoning, I find that an analysis under the closely balanced prong must include consideration of the seriousness of the error committed. The more logical question is whether the evidence is so closely balanced that the error actually committed threatened to tip the scales of justice in the State's favor and undermine confidence in the jury's verdict. This

14

position is in accordance with language often used by our supreme court and, more importantly, with the manner in which the court has frequently undertaken such analysis.

¶ 46    Applying this analysis to the instant case, I would find that the State's erroneous comments amounted to plain error under the closely balanced test. The crucial evidence in this case consisted entirely of the victim's testimony and defendant's statement to Officer Georgeff. While two witnesses testified that they saw the victim and defendant together, neither observed any contact and their testimonies did not establish the essential element of the charged offense that defendant made contact of an insulting or provoking nature with the victim. See 720 ILCS 5/12-3.05(c), 12-3(a) (West 2012). The victim was alone in testifying that defendant made contact with her while she was on the sidewalk. The victim's testimony was contradicted by Officer Georgeff's testimony regarding his interview with defendant. Defendant told Georgeff that earlier in the day he was walking his dogs when one of his dogs ran up to the victim. Defendant approached the victim, retrieved his dog, apologized for the disturbance and walked away. Defendant was adamant that he had no physical contact with the victim. Thus, the only disputed issue in the case turned on credibility—the victim's testimony against defendant's statement to the police.

¶ 47    The closeness of the evidence exacerbated the already prejudicial effect of the State's argument error. The State stepped into this balance and placed its own thumb on the scale when the prosecutor impermissibly: expressed a personal opinion that the victim's testimony was credible (*People v. Boling*, 2014 IL App (4th) 120634, ¶ 127); vouched for the witnesses credibility (*Williams*, 2015 IL App (1st) 122745, ¶¶ 12, 26; *People v. Lee*, 229 Ill. App. 3d 254, 261 (1992)); and placed the integrity of the State's Attorney's office behind the credibility of the witness (*People v. Hayes*, 183 Ill. App. 3d 752, 756 (1989)). In the words of the United States

15

Supreme Court, the State's error is *highly prejudicial* because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young,* 470 U.S. 1, 18-19 (1985). Therefore, considering the seriousness of the error in conjunction with the closeness of the evidence, I would find that the State's improper comments were plain error. As a result, I would reverse defendant's conviction and remand the cause for a new trial. Because this issue warrants a new trial, I would not address the evidentiary issue; however, I agree with the majority's finding that the court erred in admitting the grooming evidence.

¶ 48　　　For the reasons stated, I dissent from the majority's affirmance of defendant's conviction, and I would reverse and remand the cause for a new trial.