**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230076-U

Order filed June 21, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0076 Circuit No. 18-CF-1979 |
| JOSE F. VILCHIS, | ) ) ) | Honorable Daniel D. Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   The trial court did not allow excessive other-crimes evidence or give an improper limiting instruction. The State's closing argument was not improper. Based on the record before us, we are unable to conclude counsel was ineffective in failing to ask for further redaction of a video of defendant's police interview.

¶ 2      Defendant, Jose F. Vilchis, was convicted of eight counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2018)) and sentenced to a total of 96 years' imprisonment. On appeal, he argues (1) the jury heard an excessive amount of other-crimes testimony, (2) the trial court

issued an improper limiting instruction on other-crimes evidence, (3) the prosecutor's closing argument was improper, and (4) trial counsel was ineffective. We affirm.

¶ 3                                                      I. BACKGROUND

¶ 4        A grand jury indicted defendant on 14 counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2018)) and 4 counts of aggravated criminal sexual abuse (720 ILCS 5/11-1.60(d) (West 2018)). The charges alleged defendant, on several occasions between December 1, 2013, and March 1, 2014, engaged in numerous instances of sexual misconduct with B.T., who was between 13 and 17 years of age, by placing his hands and mouth on her vagina. Defendant was B.T.'s gymnastics coach during that time.

¶ 5        Before trial, the State presented two separate motions *in limine* seeking to admit other-crimes evidence, specifically to allow six of defendant's former gymnastics students (C.S., K.S., J.P., G.R., M.B., and C.B.) to testify regarding their experiences of abuse by defendant. The State sought to admit their testimony for the purpose of establishing propensity, motive, intent, absence of mistake or accident, a continuing narrative of events, rebut a defense, and *modus operandi*. The trial court ultimately allowed C.S., K.S., and J.P. to testify for the purpose of showing defendant's propensity and "for what other crimes evidence is allowed in for, which is lack of mistake and those types of things or a common occurrence, for which I think these incidents are all close enough in how they occurred, that it is more probative to me than prejudicial." The court denied the motions as to the remaining three gymnasts, finding the abuse they suffered was too remote in time to the conduct complained of in this case.

¶ 6        The State proceeded at trial on 10 of the 14 counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2018)). B.T. testified her mother owned I&M Gymnastics and defendant was her coach. Defendant told her she needed to wear her leotard high on her hips to show off her

2

legs. He would adjust her leotard himself by putting his fingers underneath the leotard and pulling it up. B.T. started taking private lessons with defendant, during which they were often the only two people in the gym. These private lessons involved more stretching and massaging than group lessons. B.T. testified to four separate occasions of abuse during private lessons. On each occasion, defendant would move her leotard and put his hands and mouth on her vaginal area. B.T. never told anyone about the abuse.

¶ 7        During trial, three other former students testified (C.S., K.S., and J.P.). Before each of their testimonies, the court read the following limiting instruction to the jury without objection:

> "Evidence will be received that the defendant has been involved in conduct other than that charged in the indictment. This evidence will be received on the issues of the defendant's propensity to commit sexual assaults, the defendant's motive, intent, absence of mistake or accident, to rebut a defense, and to establish the defendant's *modus operandi* and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct, and, if so, what weight should be given to this evidence on the issues of the defendant's propensity to commit sexual assault, the defendant's motive, intent, absence of mistake or accident, to rebut a defense, and to establish the defendant's *modus operandi*."

¶ 8        C.S. testified defendant was one of her gymnastics coaches at I&M Gymnastics. He wanted the gymnasts to wear their leotards over the hipbone like elite gymnasts. Defendant would adjust her leotard himself by putting his fingers under the leotard and pulling it over her hipbones, touching her skin. During a private lesson, defendant pulled her leotard up and kissed her hips

3

underneath the leotard before his lips came into direct contact with her labia. Defendant asked if she was uncomfortable, because she looked it, and she told him she felt uncomfortable.

¶ 9 K.S. testified she trained privately with defendant at I&M Gymnastics. Defendant would adjust her leotard by pulling it from the front over her hips. During a power outage at the gym, defendant moved her to a secluded area in the back of the gym, adjusted her leotard, and touched the outside of her vagina with his hands. On another occasion, he touched and squeezed her butt.

¶ 10 J.P. testified she took private lessons with defendant in the 1990s. Defendant wanted the gymnasts to wear leotards high over the hipbone. He gave J.P. very high-cut leotards with underwear to wear underneath. During a private lesson, while J.P. was performing a handstand, defendant grabbed her legs, held them tightly, and kissed the front of her vagina.

¶ 11 C.S., K.S., and J.P. all testified it is not unusual for coaches to touch gymnasts when spotting or correcting form.

¶ 12 A gymnastics coach and a detective also testified on behalf of the State. During the detective's testimony, the jury saw a redacted video of defendant's police interview. The parties had stipulated to the redactions before trial. The record does not contain the redacted video or the stipulation.

¶ 13 Defendant moved for a directed verdict, which the trial court granted in part, finding in favor of defendant on two counts. The trial proceeded on the remaining eight counts of criminal sexual assault.

¶ 14 The defense called defendant's daughter, Jessica Vilchis Torres, to testify. She testified she was an elite gymnast, and her parents were both gymnasts. Defendant started working at I&M Gymnastics after she had moved to California. She visited I&M Gymnastics a total of 10 times

4

when visiting her parents and never saw anything unusual. She testified it was not unusual for a coach to touch a gymnast's legs or butt. Defendant did not testify.

¶ 15    During the jury instruction conference, trial counsel generally objected to propensity evidence being allowed but did not object to the other-crimes instruction because "that's the instruction."

¶ 16    The jury convicted defendant on eight counts of criminal sexual assault. The trial court sentenced him to an aggregate term of 96 years' imprisonment (consecutive 12-year terms on each of the eight counts). Defendant did not file a motion for a new trial or to reconsider his sentence. This appeal followed.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant argues (1) the jury heard an excessive amount of other-crimes testimony, (2) the trial court's limiting instruction improperly advised the jury it could consider the other-crimes testimony as substantive evidence of defendant's guilt, (3) the prosecutor's closing argument was improper, and (4) trial counsel was ineffective for failing to seek further redaction of defendant's recorded police interview. Defendant acknowledges he failed to preserve his first three arguments for appeal. Nevertheless, he asks us to review them as plain error or, alternatively, as ineffective assistance of counsel.

¶ 19    "To preserve a purported error for appellate review, a defendant must object to the error at trial and raise the error in a posttrial motion." *People v. Williams*, 2022 IL 126918, ¶ 48. "Failure to do either results in forfeiture of such review, but the forfeiture may be excused when the error is plain." *Id.* "[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence."

5

*People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). "The first step in conducting a plain-error review is to determine whether an error occurred at all." *People v. Montgomery*, 2018 IL App (2d) 160541, ¶ 23.

¶ 20 "The effective assistance of counsel refers to competent, not perfect, representation." *People v. Lemke*, 349 Ill. App. 3d 391, 398 (2004). To prevail on an ineffective assistance claim, a defendant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶ 21 "When addressing a claim of plain error and an alternative claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error." *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78. "Absent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture." *Id.* (quoting *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179).

¶ 22                                    A. Amount of Other-Crimes Testimony

¶ 23 Defendant first argues he was denied a fair trial because the jury heard an excessive amount of other-crimes testimony. The trial court allowed other-crimes testimony from three witnesses over defense's objection, and defendant now asserts his trial was dominated by this other-crimes testimony.

¶ 24 Generally, evidence of uncharged conduct is inadmissible to demonstrate propensity and may only be admitted to demonstrate proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident *People v. Donoho*, 204 Ill. 2d 159, 170 (2003); Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). However, under section 115-7.3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-7.3 (West 2022)), courts may admit evidence of

other crimes to show defendant's propensity to commit sex offenses. See *Donoho*, 204 Ill. 2d at 176. In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider (1) the proximity in time to the charged offense, (2) the degree of factual similarity to the charged offense, or (3) other relevant facts or circumstances. 725 ILCS 5/115-7.3(c) (West 2022).

¶ 25    Defendant emphasizes the issue is not that all other-crimes evidence should have been excluded, but rather that the trial judge allowed too much other-crimes evidence. He cites *People v. Cardamone*, 381 Ill. App. 3d 462 (2008). There, seven complainants testified to 26 charged acts and 158 to 257 uncharged acts, and eight additional complainants were permitted to testify about uncharged acts. *Cardamone*, 381 Ill. App. 3d at 491-93. Although the court noted "it is difficult to determine precisely where to draw the line[,]" the other-crimes evidence was "overwhelming and undoubtedly more prejudicial than probative." *Id.* at 497. The sheer volume of other-crimes evidence allowed in *Cardamone* presented particularly egregious circumstances that are not present here. Indeed, the other-crimes evidence in this case consisted of five instances of misconduct.

¶ 26    Defendant also argues the facts of this case are similar to those in *People v. Salem*, 2016 IL App (3d) 120390, and *People v. Brown*, 319 Ill. App. 3d 89 (2001). In *Salem*, "the jury received four times the amount of evidence for the uncharged crimes" as compared to the charged offenses. *Salem*, 2016 IL App (3d) 120390 ¶ 58. The court held it was an abuse of discretion to allow the State to introduce unlimited other-crimes evidence as proof of the defendant's mental state. *Id.* ¶ 59. Notably, however, *Salem* did not involve section 115-7.3's exception to the inadmissibility of propensity evidence. "[D]anger of unfair prejudice in the context of a section 115-7.3 case, as opposed to a common-law other-crimes case, is greatly diminished." *People v. Walston*, 386 Ill.

App. 3d 598, 619 (2008). In section 115-7.3 cases, "not only is other-crimes evidence offered to show propensity no longer *per se* unfairly prejudicial, it is actually proper." *Id.* at 620.

¶ 27      Like *Salem*, *Brown* involved other-crimes evidence in the common-law context, not under section 115-7.3. In *Brown*, the State called 12 witnesses, 6 of whom testified about an uncharged incident. *Brown*, 319 Ill. App. 3d at 97. Four of the six witnesses testified only about the uncharged incident. *Id.* During jury deliberations, the jury asked if it could convict based on the uncharged incident. *Id.* at 100-01. According to the court, this question suggested "the jury was having serious difficulties dealing with the concept of the limited purpose for which the other-conduct evidence was admitted." *Id.* The court ultimately concluded, "[T]he State did more than conduct a minitrial on other-conduct evidence: it switched the focus of the trial to the prior incident." *Id.* at 97. Thus, relying on *Cardamone*, *Salem* and *Brown,* defendant urges us to find that excessive other-crimes testimony undermined the jury's verdict.

¶ 28      In response, the State argues the admitted other-crimes evidence was not excessive. It relies on *People v. Perez*, 2012 IL App (2d) 100865. There, the defendant argued the trial court improperly permitted an excessive amount of other-crimes evidence under section 115-7.3. *Perez*, 2012 IL App (2d) 100865, ¶ 1. The defendant was charged with two incidents, and the other-crimes incidents were grouped into four categories. *Id.* ¶ 50. The court concluded, "While the quantity of other-crimes evidence did exceed that of the charged conduct, it certainly did not rise to the extreme volume reflected in *Cardamone* and it otherwise reflected relevant propensity evidence under section 115-7.3." *Id.* The other-crimes witness did not testify at length about each alleged uncharged incident, and the alleged uncharged conduct was not more extreme or heinous than the charged conduct. *Id.* ¶¶ 52-53.

¶ 29    The facts of this case are more similar to *Perez* than *Brown*. As in *Perez*, the other-crimes witnesses did not testify at length. C.S., K.S., and J.P. had similar experiences to B.T., but the record is clear defendant was charged for acts solely against B.T. "Certainly, the law does not permit the inference that because the defendant has committed *some* bad act or crime, he must have committed the charged offense. Just the same, the law does not shield a defendant from proof of his particular tendencies or patterns of conduct, as they might bear logically on whether he acted in conformity with them in committing the charged offense." *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 76. The probative value of the other-crimes testimony outweighed the prejudicial effect. C.S. and K.S. both attended I&M Gymnastics with B.T., and the events they each testified to occurred in close proximity. C.S., K.S., and J.P. all testified to experiences that were rather similar to that of B.T. They all testified defendant preferred a certain style of leotard and touched their vaginal area. The amount of evidence was not excessive in light of the purpose for which it was allowed—to show defendant's propensity to commit sexual misconduct with his teenage gymnastics students. See section 115-7.3(b) (evidence of the defendant's commission of another sexual offense may be considered for its bearing on any matter to which it is relevant.) There was no error in the amount of other-crimes evidence admitted, and therefore no plain error.

¶ 30    Accordingly, because there was no error in the admission of other-crimes evidence, trial counsel was not deficient in failing to preserve the issue. See *e.g.*, *People v. Mister*, 2016 IL App (4th) 130180-B, ¶ 94. As such, defendant's claim of ineffective assistance of counsel fails.

¶ 31                              B. Limiting Instruction

¶ 32    In conjunction with his argument that the amount of other-crimes evidence was excessive, defendant argues the limiting instruction instructed the jury it could consider the other-crimes testimony as substantive evidence of defendant's guilt.

9

¶ 33    "The purpose of jury instructions is to provide the jury with the correct legal principles applicable to the evidence, so that the jury may reach a correct conclusion according to the law and the evidence." *People v. Bannister*, 232 Ill. 2d 52, 81 (2008). An Illinois Pattern Jury Instruction should be used whenever it accurately states the law. *Montgomery*, 2018 IL App (2d) 160541, ¶ 17. But "where a pattern instruction does not accurately state the law, Rule 451(a) [(Ill. S. Ct. R. 451(a) (eff. July 1, 2006)] authorizes the trial court to modify it." *Bannister*, 232 Ill. 2d at 81. Generally, the decision to give a certain instruction rests in the sound discretion of the trial court. *People v. Fonder*, 2013 IL App (3d) 120178, ¶ 19. However, "when the issue is whether the applicable law was correctly conveyed by the instructions to the jury, the appropriate standard of review on appeal is *de novo*." *Id.*

¶ 34    Prior to each other-crimes witness's testimony, the court read the following instruction without objection:

> "Evidence will be received that the defendant has been involved in conduct other than that charged in the indictment. This evidence will be received on the issues of the defendant's propensity to commit sexual assaults, the defendant's motive, intent, absence of mistake or accident, to rebut a defense, and to establish the defendant's *modus operandi* and may be considered by you only for that limited purpose. It is for you to determine whether the defendant was involved in that conduct, and, if so, what weight should be given to this evidence on the issues of the defendant's propensity to commit sexual assault, the defendant's motive, intent, absence of mistake or accident, to rebut a defense, and to establish the defendant's *modus operandi*."

10

During the jury instruction conference, trial counsel generally objected to propensity evidence being allowed, but stated she did not object to this instruction because "this is the instruction." The jury also received this instruction prior to their deliberation.

¶ 35            On appeal, defendant argues this instruction was improper because it set forth several inapplicable bases for consideration of other-crimes testimony and because it allowed the jury to consider such testimony as substantive evidence of guilt. He argues motive was inapplicable because his alleged sexual assault of another gymnast could not be a motive for him to assault B.T.; *modus operandi* was irrelevant because defendant's identity was not at issue; and intent and absence of mistake or accident were inapplicable because sexual assault does not fall into the category of appropriate coach-student touching. He argues, moreover, that because he did not raise an affirmative defense, any other-crimes evidence rebutting his theory of innocence "could only be interpreted by the jury to mean evidence that [he] did commit the charged offenses."

¶ 36            The State argues the jury was properly instructed and the other-crimes evidence was appropriately admitted to establish defendant's pattern of conduct, which was highly relevant to his motive. The other-crimes evidence was also relevant to establish defendant's *modus operandi* because it established defendant engaged in the same pattern of grooming his students. Intent was implicated in this case because defendant denied he engaged in the acts of sexual penetration but did not deny he coached B.T., and the evidence raised questions about his conduct and intent toward the gymnasts. Further, in response to defendant's argument that the evidence was not admissible when he raised no affirmative defense, the State contends his argument overlooks the following: (1) the instruction plainly directed the jury to limit its consideration of the evidence to the specific purposes for which it was received, (2) the admissible bases for admission of other-crimes evidence is not limited to those enumerated in the form instruction, and (3) even if every

11

other basis for admission listed in the instruction were deemed inapplicable, then the jury may still consider the testimony for propensity purposes. We agree with the State.

¶ 37 The trial court's instruction was modeled after Illinois Pattern Jury Instructions, Criminal, No. 3.14 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.14). IPI Criminal No. 3.14 provides, in part "This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (____)] and may be considered by you only for that limited purpose." According to the Committee Note,

"the Committee determined that this instruction should be broadened by including a blank within the alternatives provided to explain to the jury why the evidence is being admitted. If the court concludes that none of the specific alternatives provided in paragraph [2] of this instruction fits the facts of the case before it, then the court should set forth in the blank in this instruction whatever explanation does fit the evidence." IPI Criminal No. 3.14, Committee Note.

¶ 38 According to Illinois Rule of Evidence 404(b) (eff. Jan. 1, 2011), evidence of other crimes, wrongs, or acts may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Furthermore, when a defendant is accused of criminal sexual assault, evidence of that defendant's commission of another criminal sexual assault "may be considered for its bearing on any matter to which it is relevant." 725 ILCS 5/115-7.3(b) (West 2022).

¶ 39 We find this instruction was properly limiting on the jury. The jury was instructed to consider the other-crimes evidence only for six relevant purposes, and they were free to disregard the other-crimes evidence. Moreover, "even when other-crimes evidence is not admissible

12

pursuant to certain exceptions, the inclusion in a jury instruction of the proper exception warrants affirming the defendant's conviction." *People v. Mendez*, 2013 IL App (4th) 110107, ¶ 35.

¶ 40    Motive was a proper purpose for allowing other-crimes evidence. Defendant's interpretation of motive is too narrow. The other-crimes evidence here established defendant had engaged in a similar pattern of behavior with each victim and thus indicated his motive to commit similar acts of sexual misconduct with B.T. See *People v. Petrakis*, 2019 IL App (3d) 160399, ¶ 23.

¶ 41    The other-crimes evidence was also properly admitted to demonstrate *modus operandi*. Defendant's defense was that he did not commit the charged acts and involved questioning the gymnasts' credibility. Considering this defense, "*modus operandi* was relevant to the issue of whether defendant committed the charged crimes." *People v. Pitts*, 299 Ill. App. 3d 469, 476 (1998). Evidence of "*modus operandi* has been held admissible in prosecutions for sex offenses even where the identity of the accused was not in dispute." *People v. Fuller*, 117 Ill. App. 3d 1026, 1034 (1983).

¶ 42    Intent was a proper purpose for admitting other-crimes evidence. "[A] defendant's prior conduct toward the victim or persons in the same class of the victim is admissible to show intent." *Fretch*, 2017 IL App (2d) 151107, ¶ 76. The testimony of the gymnasts, who were in the same class as B.T., that being defendant's teenage gymnastics students, was admissible to show defendant's intent. In particular, J.P. testified defendant touched her before he touched B.T., as she was his student in the 1990s. Moreover, intent is at issue in "cases in which the defendant did not admit to the acts underlying the offense, but did admit at least that he was with the victim at the time in question, and the evidence raised questions about the defendant's conduct and intent toward

13

the victim during that time." *Id.* ¶ 66. Although defendant did not testify, the evidence at trial was undisputed that he provided one-on-one lessons to gymnasts.

¶ 43    Finally, absence of mistake or accident was also at issue, as multiple witnesses testified some touching between coaches and gymnasts is normal and expected.

¶ 44    Although including "to rebut a defense" as a basis for the jury to consider may not be wholly relevant when defendant does not allege some sort of affirmative defense, there was no error. The limiting instruction otherwise contained proper exceptions. See *supra* ¶ 39.

¶ 45    Lastly, defendant's contention the jury was instructed to consider the other-crimes testimony as substantive evidence of defendant's guilt flies in the face of the limiting instruction. "All evidence admitted is admitted substantively, and the jury may consider all evidence before it in reaching its verdict *unless* the trial court informs the jury that some particular kind of evidence has been received for a limited purpose." *People v. Donlow*, 2020 IL App (4th) 170374, ¶ 73 (Emphasis in original.). The limiting instruction instructed the jury it may consider the other-crimes testimony *only* as it relates to propensity, motive, intent, absence of mistake or accident, to rebut a defense, or to establish defendant's *modus operandi*. There is no evidence the jury disregarded this instruction. There was no error in this limiting instruction, and therefore there was no plain error. Accordingly, because there was no error, trial counsel's performance as to the limiting instruction was not deficient. *Gilker*, 2023 IL App (4th) 220914, ¶ 78. Therefore, defendant's claim of ineffective assistance of counsel fails.

¶ 46                          C. Prosecutor's Closing Argument

¶ 47    Defendant argues the prosecutor made improper arguments during the rebuttal portion of her closing argument. Specifically, defendant argues the prosecutor urged the jury to consider the

14

other-crimes testimony as substantive evidence of the charged offenses, vouched for the credibility of the State's witnesses, and made a prejudicial and irrelevant comment that B.T.'s mother was ill.

¶ 48    "Closing arguments must be viewed in their entirety, and allegedly erroneous arguments must be viewed in context." *People v. Ammons*, 2021 IL App (3d) 150743, ¶ 43. "Prosecutors are generally afforded wide latitude in closing argument." *People v. Effinger*, 2016 IL App (3d) 140203, ¶ 24. "A prosecutor may express an opinion based on the record, and may draw reasonable inferences from the evidence presented; however, a prosecutor may not vouch for the credibility of a government witness or use the credibility of the State's Attorney's office to bolster a witness's testimony." *Id.* Whether a prosecutor's statements at closing argument were so egregious they warrant a new trial is reviewed *de novo*. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007).

¶ 49    During the defense closing argument, counsel highlighted the fact there was no physical evidence or DNA, surveillance videos, eyewitnesses, or medical testimony in this case. Counsel argued B.T.'s allegations lacked specificity, and "[e]ven the most dramatic retelling is unbelievable." Additionally, she argued memory is not perfect, memories can change, and because gymnastics is an intimate sport, perhaps some acts were misinterpreted.

¶ 50    Defendant takes issue with seven statements made by the prosecutor in rebuttal. To provide context, we include the pertinent portions of the State's argument, including the seven statements:

> "Don't be fooled. You don't have to have DNA to convict someone of criminal sexual assault. *You can convict on the statement of one victim alone if you find her credible, but we don't just have one victim. We have the victim and we have other girls who this happened to.*
>
> * * *

We rely on the girls to come forward to tell their story and fortunately you have *[C.S.] who is extremely credible, I would submit to you*. She testified how the defendant pulled her leotard to the side ***.

And it's corroborated by the defendant's own entry in his journal about that day that he offended her. I think the message that she sends him that day is she's not going to be one of his victims. He could tell by the way that she reacted that maybe she wasn't the person to go after, you know.

He made a note to himself. I think he made a mental note to himself like oh, oh, she maybe isn't going to let me get away with this.

* * *

This isn't fun for them. And you heard from [B.T.]. *Her mother is sick*. Her life went on. She's got other things to deal with. [J.P.] comes up here from Florida. She's got two kids. She didn't want to be here.

But every one of these girls, I submit to you, was guided by it's the right thing to do. You know, it's easy to take advantage of young girls because young girls don't know how to react. They feel powerless. They don't feel like they're in a position to take charge of their situation.

* * *

*But essentially it does come down to credibility. Do you believe the girls? Do you believe them?* And it's interesting because I think the argument here is don't believe them. Don't believe them because if you believe them, they would have more details.

Well, I argue to you the exact opposite. [B.T.] did not come in here and tell you everything in specific detail, you know, and she didn't make it into something it wasn't by filling in the gaps, filling in the holes and trying to make it more salacious. She told you what she remembered and that's consistent with our memories as people.

* * *

And another thing that's interesting is *if you look at each of the girl's statements and you look at them collectively*, another thing that's interesting is, you know, the focus definitely does seem to be on the vaginal area. Maybe that's not a surprise. I mean, this is a criminal sexual assault, but, you know, there's not a lot of groping of the breasts. ***

* * *

But when you take all of these details and you put them all together and you examine each girl's statement, how they are alike, the experiences they had and the details that weren't there, *I think you'll come to find that they're very credible, worthy of belief and we are asking you to believe them 100 percent what they said to you.*

***

*There's not just the voice of one girl crying out here for justice. It's four girls' voices. We want you to listen to those voices when you're deliberating.* Consider all the evidence in this case." (Emphases added.)

¶ 51    Reviewing the prosecutor's comments in context, defendant's allegations fail. The prosecutor did not urge the jury to consider the other-crimes testimonies as substantive evidence.

17

The statement, "We don't just have one victim. We have the victim and we have other girls" suggests the other-crimes evidence strengthens the charged allegations. Similarly, looking at the girls' statements "collectively" and listening to the "four girls' voices" does not necessarily suggest the jury must consider the other-crimes testimony as substantive evidence. But rather, the jury must consider all evidence in the case (see IPI Criminal No. 2.03 (jury must consider *all of the evidence* in the case when deciding whether the State met its burden of proof beyond a reasonable doubt)), and the prosecutor's argument is the other-crimes testimonies support the charged allegations.

¶ 52    The prosecutor's three statements regarding credibility do not read as the prosecutor vouching for the victim and other-crimes witnesses. First, the statement "C.S. who is extremely credible, I would submit to you" must be understood in context. The prosecutor explained C.S.'s testimony was corroborated by defendant's own journal entry, in which defendant noted he had offended her. Second, the phrase, "I think you'll come to find that they're credible" is not a personal assurance of their credibility. "[T]he credibility of a witness is a proper focus of closing argument if it is based on the evidence or reasonable inferences drawn from the evidence. *People v. Dresher*, 364 Ill. App. 3d 847, 859 (2006). In context, the prosecutor urged the jury to consider the similarities of each gymnast's experience with defendant. Third, the phrase, "we are asking you to believe them 100 percent" is a request, not an assurance. Moreover, defense counsel repeatedly put the witnesses' credibility at issue, inviting a response from the State. See *People v. Johnson*, 208 Ill. 2d 53, 113 (2003).

¶ 53    Defendant claims the prosecutor's comment about B.T.'s mother being sick was irrelevant, improperly suggested she may have had relevant evidence for the jury, and was an effort to garner sympathy. We agree the comment was irrelevant. But read in context, the comment simply

18

recognized that trial was not "fun" for B.T., who could have been by her ailing mother's side at the time of trial. The comment was followed by a remark that one of the witnesses, J.P., had traveled from Florida, leaving her two children behind to testify. Clearly, then, the prosecutor was stating B.T. and J.P. did not want to attend trial but felt obligated to do so despite their family obligations and the inconvenience it caused to their lives. Further, the prosecutor mentioned the illness once during her rebuttal and never again. "Reviewing courts will consider the closing argument as a whole, rather than focusing on selected phrases or remarks." *People v. Perry*, 224 Ill. 2d 312, 347 (2007).

¶ 54 The trial court reminded the jury twice following objections during trial counsel's closing argument that arguments are not evidence. It also instructed the jury that "[n]either opening statements nor closing arguments are evidence and any statement or argument made by attorneys which is not based on the evidence should be disregarded." If there was error in the prosecutor's closing argument, the jury instruction cured any potential error. See *Johnson*, 208 Ill. 2d at 116. There was no error, plain or otherwise. Thus, trial counsel was not ineffective for failing to object to the prosecutor's statements.

¶ 55                                      D. Police Interview Video

¶ 56 Defendant argues he was denied a fair trial and the effective assistance of counsel in connection with a video of defendant's police interview. According to defendant, the jury was allowed to hear the interrogating officer make prejudicial comments and refer to an additional other-crimes witness, G.R., who was not allowed to testify. Specifically, defendant argues (1) the jury never should have heard any reference to G.R., (2) the detective said he "believes these girls wholeheartedly," which was improper for the jury to hear, and (3) the jury saw defendant's arrest on video, which was highly prejudicial. Before trial, the parties stipulated to certain redactions,

19

and the jury saw a redacted version of the interview. The record on appeal, however, contains only the full video, without any redactions.

¶ 57    This court ordered the parties to supplement the record with a stipulation detailing the portions of the complete video that were redacted and not played for the jury, with approximate time stamps. See Ill. S. Ct. R. 329 (eff. July 1, 2017) ("Material omissions or inaccuracies *** may be corrected by stipulation of the parties[.]"). We received four affidavits in response to our order, none of which include a stipulation. The affidavit from the Will County Circuit Clerk's Office indicates the clerk's office does not possess any other versions of the police interview video. The affidavits of the two assistant state's attorneys who tried this case indicated the video the jury saw was a redacted version, in which all mentions of G.R. were removed based on prior court rulings. The assistant state's attorneys also averred they redacted a portion of the video showing defendant being arrested and taken into custody. The affidavit of defendant's trial counsel indicated the video shown to the jury redacted defendant's arrest and any mention of G.R. She also averred she received a copy of the redacted video before trial.

¶ 58    Defendant's appellate counsel filed a response to our order, in which he indicated he had received an envelope from defendant's trial attorney containing 19 CDs. Two of the CDs were labeled "Channahon Police Department Vilchis interview." One of the CDs contained a video identical to the video in our record, and the other contained a video that did not play properly. He believed the second video was also identical to the video in our record. He spoke with defendant's trial attorney, and she was certain she had a redacted version and believed it was sent to the appellate defender's office.

¶ 59    Defendant has the burden of providing a sufficiently complete record, and we must resolve against defendant any doubts arising from the incompleteness of the record. *Foutch v. O'Bryant*,

99 Ill. 2d 389, 391-92 (1984). Absent the redacted video or a stipulation from the parties pursuant to our order, we do not know what the jury was presented, and we are unable to determine whether counsel should have sought further redaction of the video. Accordingly, we must presume the video was properly redacted. See *id.* Accordingly, we reject this contention.

¶ 60                                   III. CONCLUSION

¶ 61          The judgment of the circuit court of Will County is affirmed.

¶ 62          Affirmed.